*In re* Sonia I. Vélez Colón, querellada.

*Número:* AB-2012-46          *Resuelto:* 14 de julio de 2017

*Margarita Mercado Echegaray*, procuradora general; *Guillermo Figueroa Prieto*, abogado de la querellada; *Zaida Hernández Torres*, quejosa.

## RESOLUCIÓN

> [D]ebemos recordar que el respeto hacia los tribunales y la obligación de desalentar y evitar ataques injustificados contra los jueces no sólo están entre los pilares fundamentales sobre los que se erige nuestro código deontológico, sino que también sobre ellos descansa la buena marcha de los procedimientos judiciales y la confianza que el público deposita en ellos. *In re Sánchez Ramos*, 174 DPR 453, 469 (2008).

El deber que tenemos todos los miembros de la profesión jurídica de instituir y mantener un orden jurídico, íntegro y eficaz, que goce de la completa confianza y el apoyo de la ciudadanía, nos impide avalar las actuaciones llevadas a cabo por la Lcda. Sonia I. Vélez Colón. Estas actuaciones, las cuales se discutirán a continuación, constituyeron una violación al Código de Ética Profesional y, sin lugar a dudas, deben ser motivo de una sanción disciplinaria. Además, puesto que estas no están en controversia, procedemos a resolver sin otro trámite ulterior.[1]

### I

En diciembre de 2011 surgieron unas denuncias relacionadas con la mala utilización de personal, propiedad y fondos públicos por parte del ex Juez Presidente de este Tribunal, Hon. Federico Hernández Denton. Tanto la Rama Legislativa como la Ejecutiva iniciaron sendas investigaciones en cuanto a dichas denuncias.

---

[1] Véanse: *In re Sánchez Ramos*, 174 DPR 453, 460 (2008); *In re Davison Lampón*, 159 DPR 448, 455 (2003); *In re Irizarry Vega*, 151 DPR 916 (2000).

Por su parte, la licenciada Vélez Colón, excediendo sus poderes y facultades como Directora de la Oficina de Administración de los Tribunales (OAT), el 13 de enero de 2012 contrató al Lcdo. Cesár López Cintrón para que iniciara una investigación. Del contrato del licenciado López Cintrón surge una descripción sumamente laxa y escueta del tipo de investigación que este llevaría a cabo, a saber, "[una investigación] a la luz de los señalamientos públicos que recientemente se han formulado sobre el uso de recursos y fondos públicos en la Rama Judicial [...]". Informe de la Procuradora General, Anejo 1, pág. 1. Del mismo documento surge que este cobraría doscientos dólares ($200) por cada hora trabajada.

Es sumamente importante resaltar que dicho contrato se realizó a espaldas de la mayoría de los miembros de esta Curia. No fue hasta el 26 de enero de 2012 que dicha mayoría se enteró por *El Nuevo Día* —periódico que realizó una entrevista a la licenciada Vélez Colón sobre el particular y cuya portada leía "Histórica pesquisa al Supremo"— que la licenciada Vélez Colón había contratado al licenciado López Cintrón para que realizara una investigación que incluiría aspectos de seguridad y el uso de recursos y fondos públicos por parte de los Jueces y las Juezas de este Tribunal, ello como secuela de las denuncias presentadas contra el Hon. Federico Hernández Denton.

Ante la sorpresiva e improcedente investigación, el mismo 26 de enero de 2012, seis (6) Jueces de este Tribunal emitieron una comunicación pública. Expresaron en ella su preocupación en cuanto al daño que la referida investigación podía causar a la Rama Judicial. Específicamente, señalaron, en lo pertinente, lo siguiente:

> Desde que juramos a nuestros cargos hemos insistido en que los fondos y recursos de la Rama Judicial se utilicen adecuadamente y con transparencia. Velar por el buen uso de los recursos y fondos públicos es un fin legítimo y ha sido nuestra política que al pueblo se le rinda cuenta de ello. Sin embargo, ante las serias imputaciones que confronta el Juez Presidente

Federico Hernández Denton, resulta altamente sospechosa e inoportuna la contratación de un ex fiscal especial independiente para realizar una investigación a razón de $200.00 por hora hasta un máximo de $100,000 en 6 meses. Esto, en momentos en que los empleados de la Rama Judicial le exigen justicia salarial y se alega de parte de la OAT falta de recursos.

Nuestro deber ministerial es velar por la transparencia y la corrección de todos los procesos administrativos en nuestra Rama. No es apropiado realizar transacciones con fondos públicos para interferir con procesos legítimos e investigativos de otras ramas de gobierno. Esto es de suma importancia ya que es de conocimiento general que varios alguaciles y otros funcionarios han testificado en dichos procesos los cuales están en curso al presente. Iniciar una investigación en estas circunstancias no constituye un fin público y lesiona el buen nombre de los jueces y juezas de toda la Rama Judicial.

Un día después, el 27 de enero de 2012, el Periódico *El Nuevo Día*, en una noticia titulada "No se cruzará de brazos", reseñó lo acontecido en una entrevista que se le realizó al Hon. Federico Hernández Denton y a la licenciada Vélez Colón en relación con la llamada "pesquisa". De la noticia surge que la licenciada Vélez Colón expresó lo siguiente sobre el particular: "cuando uno se mete a la guerra quizás no recibe un tiro, pero un raspacito viene. Así que si hay raspazo, de eso se trata, de sanar y de curar". Dichas expresiones desafiantes e intimidantes que hacían referencia a un aparente estado de guerra dentro de la Rama Judicial eran indicativas de que la licenciada Vélez Colón olvidaba, entre otros asuntos, que uno de sus deberes como Directora de la OAT era propender a la administración óptima de la justicia y de la Rama Judicial.

Dado que este Tribunal siempre ha promulgado "un sistema judicial independiente con una administración efectiva e imparcial de la justicia cimentada en la confianza de la ciudadanía",[2] no podíamos quedarnos inertes ante las circunstancias descritas. Así, el 1 de febrero de 2012, me-

---

[2] *In re Aprobación R. Proc. Esp. RJ*, 184 DPR 500 (2012).

diante Resolución, este Tribunal aprobó las Reglas para los Procedimientos de Investigaciones Especiales Independientes de la Rama Judicial. Ello, para proveer un mecanismo efectivo y transparente que rigiera todos los procedimientos investigativos realizados con fondos de la Rama Judicial y relacionados con el uso de su personal y la asignación y fiscalización de fondos y de recursos judiciales. Es preciso destacar que, en la Resolución mencionada, este Tribunal expresó su completa desaprobación a las actuaciones de la licenciada Vélez Colón:

> La Constitución del Estado Libre Asociado de Puerto Rico no le reconoce a la Administración de Tribunales autoridad para realizar investigaciones disciplinarias sobre la conducta de los Jueces y Juezas del Tribunal Supremo. [...]
>
> Más aun, resulta inapropiado que una funcionaria de confianza del Juez Presidente contrate servicios para realizar una investigación sobre el uso de los fondos de la Rama Judicial relacionada con los serios señalamientos contra el Juez Presidente, Hon. Federico Hernández Denton, a quien ésta responde directamente. Lejos de fomentar la transparencia de los procedimientos e impulsar la confianza del Pueblo en nuestro sistema, estas actuaciones pueden constituir represalias e interferencias con testigos de las investigaciones realizadas por otras ramas de Gobierno. *In re Aprobación R. Proc. Esp. RJ*, 184 DPR 500, 501–502 (2012).

En conformidad con dicho sentir y con las nuevas reglas aprobadas, este Tribunal aprobó otra Resolución el 1 de febrero de 2012. Véase *In re Miembros Com. Esp. Independiente*, 184 DPR 507 (2012). Mediante esta, se constituyó una Comisión de Investigación Especial Independiente para investigar el uso de fondos y recursos públicos de la Rama Judicial, así como los desembolsos por parte de la OAT y su Directora. Además, se le ordenó a la licenciada Vélez Colón que, de manera inmediata, dejara sin efecto el contrato otorgado al licenciado López Cintrón y cualquier otra contratación relacionada con la investigación. Ello, tras destacar que las actuaciones de esta levantaban "serias interrogantes de índole constitucional y legal".

El 2 de febrero de 2012, el licenciado López Cintrón cursó una comunicación a la licenciada Vélez Colón en la que le informó que, en conformidad con la Resolución antes mencionada, renunciaría al contrato otorgado y no facturaría cantidad alguna por los servicios realizados hasta dicha fecha, los cuales incluyeron el examen de las imputaciones contra el Hon. Federico Hernández Denton y la solicitud a este último de evidencia en cuanto a las referidas imputaciones.(³)

El 21 de febrero de 2012 seis (6) Jueces de este Tribunal emitieron un voto de conformidad en relación con las dos Resoluciones aprobadas. Entre otros asuntos, manifestaron lo siguiente:

> *En Noriega v. Gobernador*, 122 DPR 650, 654 (1988), esbozamos que "[n]o hay nada más preciado para un 'hombre de bien' que su dignidad y reputación en la comunidad". Eso se expresó en el contexto de las llamadas "carpetas" que por décadas la Policía de Puerto Rico recopiló sobre ciudadanos por el mero hecho de sus ideologías.
> Creemos que esas palabras tienen gran peso en el Puerto Rico de hoy. Iniciar una investigación ilegal contra los Jueces del Tribunal Supremo por el hecho de que existan alegaciones públicas contra el Juez Presidente es un acto claro de intimidación institucional de parte de la O.A.T. que claramente lacera esta institución. Con la aprobación de las Resoluciones en controversia [...] [e]vitamos el carpeteo y la persecución, y protegemos la independencia de esta Rama sin tratar de interferir con las investigaciones que ejercen las otras Ramas en el ejercicio de sus facultades constitucionales. Los fondos y los recursos de esta Rama son para el servicio del Pueblo y no para el carpeteo o la defensa personal de alguno de los integrantes de este Tribunal. *In re Aprob. Rs. y Com. Esp. Ind.*, 184 DPR 575, 580–581 (2012).

Posteriormente, en septiembre de 2014, este Tribunal enmendó las Reglas de Disciplina Judicial con el propósito de establecer un proceso que garantizara "la integridad de

---

(³) Véase Carta del Lcdo. Cesar López Cintrón a la licenciada Vélez Colón de 2 de febrero de 2012, disponible en: http://www.ramajudicial.pr/Prensa/comunicados/2012/Renuncia-Cesar-Lopez-Cintron-Investigacion-OAT.pdf

la Rama Judicial salvaguardando la reputación de los jueces, las juezas y el funcionariado[,] quienes ejercen sus funciones de forma digna, recta y con independencia de criterio". *In re Enmdas. Rs. Disciplina Judicial*, 191 DPR 564, 564 (2014). En la Resolución de aprobación de esta enmienda, este Tribunal reafirmó "la política de cero tolerancia a las acciones que laceran la confianza del Pueblo en los tribunales y en los jueces y juezas del País". Íd., pág. 565. Por otro lado, tres (3) Jueces de este Tribunal emitieron un voto particular de conformidad en cuanto a dicha Resolución, en el que destacaron que era momento de implantar una verdadera política institucional de cero tolerancia a la corrupción judicial y que para ello era necesario que los funcionarios concernidos no actuaran a la defensiva ni se escudaran en la integridad de la mayoría de los Jueces y Juezas. Íd., pág. 583.

A su vez, la Jueza Asociada Señora Pabón Charneco emitió un voto particular de conformidad, en el que exhortó a la licenciada Vélez Colón a que evaluara profundamente su desempeño y decidiera si su permanencia como brazo administrativo le hacía más daño que bien a la imagen de la Rama Judicial en Puerto Rico. *In re Enmdas. Rs. Disciplina Judicial*, supra, págs. 579–580.

El 15 de octubre de 2014, la licenciada Vélez Colón renunció a su cargo como Directora de la OAT y a su posición de carrera en el Tribunal de Apelaciones.

## II

Como denuncia por las actuaciones de la licenciada Vélez Colón, el 6 de febrero de 2012, la Lcda. Zaida Hernández Torres presentó una queja disciplinaria ante nos en la que argumentó que el hecho de haber contratado al licenciado López Cintrón para que investigara a los Jueces y las Juezas de este Tribunal —sobre los que no había alegación o sospecha alguna de aprovechamiento de bienes o servi-

cios públicos— constituyó un ataque injustificado, en violación al Canon 9 del Código de Ética Profesional, 4 LPRA Ap. IX (en adelante, Canon 9). Además, adujo que la investigación tenía el propósito de interferir con las otras investigaciones que se estaban llevando a cabo, de distraer la atención sobre la figura central objeto del escrutinio y de proyectar ante la opinión pública que se trataba de una investigación de carácter abarcador de todos los miembros del Tribunal Supremo.

El 18 de abril de 2012, la licenciada Vélez Colón presentó una moción para solicitar el archivo de la queja. En ella sostuvo que no era su intención que se produjera una investigación de los Jueces y las Juezas de este Tribunal, pues sabía que no tenía facultad para hacerla; que el ámbito de la investigación fue definido en el contrato; que la queja debía archivarse, pues el Canon 9 no aplicaba a los jueces que estuviesen desempeñando una función judicial, y que, aun cuando se entendiera que sus actuaciones se llevaron a cabo dentro de sus funciones como abogada, tampoco aplicaría el Canon 9, pues, según la jurisprudencia de este Tribunal, dicho precepto estaba dirigido solamente a regular la conducta del abogado litigante en corte.

A más de cuatro (4) años de la presentación de la queja, el 8 de julio de 2016 la Secretaria Interina de este Tribunal remitió el expediente de la queja a la Procuradora General para la investigación y el informe correspondientes, a tenor de la Regla 14(d) del Reglamento de este Tribunal, 4 LPRA Ap. XXI-B.

El 3 de agosto de 2016, la entonces Procuradora General presentó su Informe ante nos. Primero, haciendo referencia a varios artículos de la ley que rige la Judicatura, afirmó que el cargo de Directora de la OAT no era un cargo judicial y que las acciones de la licenciada Vélez Colón debían evaluarse en virtud de los Cánones de Ética Profesional. Sin embargo, circunscribiéndose a evaluar el Canon 9, negó que la licenciada Vélez Colón lo hubiese

violado. Sostuvo que dicho canon solamente aplicaba a las actuaciones en que se incurre en el transcurso de la práctica forense de la abogacía y que, aun cuando aplicara en otros contextos, las conductas que este Tribunal había sancionado bajo él habían sido "vejatorias, desafiantes, fraudulentas, de imputaciones de conducta antiética sin fundamento en contra de un juez o que ponen en entredicho la sana administración de la justicia".[4] Así, concluyó que el ordenar una investigación de los miembros de este Tribunal no podía considerarse dentro ese grupo de conducta, que ello fue un intento de mantener la transparencia de la Rama Judicial ante el público y que procedía que este Tribunal archivara la queja.

No obstante, contrario a lo que alegan la ex Procuradora General y la licenciada Vélez Colón, y según surge claramente de los hechos esbozados en el acápite I de esta Resolución, la licenciada Vélez Colón incumplió con varios cánones del Código de Ética Profesional. Veamos.

## III

Como cuestión de umbral, no debe quedar duda de que la conducta de la licenciada Vélez Colón, mientras fungía como Directora de la OAT, debe evaluarse al amparo del Código de Ética Profesional. Aunque esta era jueza, el cargo que desempeñaba no era de carácter judicial ni comprendía el ejercicio de funciones judiciales. Así surge claramente del Artículo 2.012 de la Ley Núm. 201-2003, según enmendada, conocida como Ley de la Judicatura, 4 LPRA sec. 24j:

Todo juez que sea designado para ocupar un puesto como funcionario de confianza en el servicio central de la Rama Judicial, como lo es el de Director Administrativo de los Tribunales y aquellos otros puestos que determine el Juez Presidente que no sean incompatibles con el cargo de juez, podrá servir

(4) Informe de la Procuradora General, pág. 7.

por más de un (1) año en la posición de confianza y *quedará relevado de sus funciones judiciales* pero retendrá, a todos los fines pertinentes a su cargo, la condición y derechos de juez mientras desempeñe las funciones asignadas. Durante tal período devengará el sueldo correspondiente al puesto de confianza o el correspondiente a su cargo de juez, el que sea mayor, y una vez cese en el mismo, recibirá aquel sueldo que le habría correspondido si hubiera continuado las funciones ininterrumpidamente en su cargo de juez del Tribunal General de Justicia. Tal designación no afectará el transcurso del término de nombramiento correspondiente al cargo de juez del Tribunal General de Justicia que ostente ni los derechos al amparo de las disposiciones de las secs. 233 a 246 de este título, conocidas como la "Ley del Sistema de Retiro de la Judicatura". (Énfasis suplido).

Por otro lado, el Artículo 2.016 de la misma disposición legal, 4 LPRA sec. 24n, establece lo siguiente:

En la administración del Tribunal General de Justicia el Juez Presidente del Tribunal Supremo contará con la ayuda de un Director Administrativo de los Tribunales, quien también dirigirá la Oficina de Administración de los Tribunales. El Director Administrativo de los Tribunales *deberá ser abogado admitido al ejercicio de la abogacía*, será nombrado por el Juez Presidente y desempeñará su cargo a discreción de dicho magistrado. (Énfasis suplido).

Tal y como lo señaló la ex Procuradora General, el hecho de que solamente se requiera ser abogado y no juez para desempeñar el puesto, demuestra que las funciones que se ejercen como parte del cargo no son de carácter judicial. Por lo tanto, la licenciada Vélez Colón, como abogada que ejercía el puesto de Directora de la OAT, debía cumplir con todos los cánones del Código de Ética Profesional.

IV

El Criterio General de la Parte I del Código de Ética Profesional —Deberes del Abogado para con la Sociedad—, 4 LPRA Ap. IX, exige que "todo abogado, como ciudadano y en su capacidad profesional, ya sea como juez, fiscal, abo-

gado postulante, asesor o en cualquier otro carácter, actúe siempre de acuerdo al ideal expresado en el preámbulo de estos cánones". Este Preámbulo, el cual "consigna el ideal del buen abogado",(5) establece lo siguiente:

> En Puerto Rico, *donde el sistema democrático es fundamental para la vida de la comunidad y donde la fe en la justicia se considera factor determinante en la convivencia social, es de primordial importancia instituir y mantener un orden jurídico íntegro y eficaz, que goce de la completa confianza y apoyo de la ciudadanía.*
>
> La consecución de estos fines le impone a los miembros de la profesión jurídica, sobre quienes recae principalmente la misión de administrar la justicia y de interpretar y aplicar las leyes, el deber de desempeñar su alto ministerio con la mayor y más excelsa competencia, responsabilidad e integridad.
>
> En particular, el logro de estos fines le exige al abogado: (a) que entienda que el fin primordial de su función como jurista es el servicio a la sociedad, servicio que tiene que estar dirigido principalmente a lograr la existencia real de un orden jurídico íntegro y eficaz y que tiene que estar orientado esencialmente por los principios de vida democrática y de respeto a la inviolable dignidad del ser humano que rigen la convivencia social en el país; [...] (d) que esté consciente de la importancia de evitar aún la apariencia de conducta impropia. (Énfasis suplido).

Cónsono con lo enunciado, el Canon 4 del Código de Ética Profesional, 4 LPRA Ap. IX, dispone que "[e]s deber de todo abogado laborar continuamente por el mejoramiento del ordenamiento jurídico y de los procesos e instituciones legales". Aunque este Tribunal no ha tenido la oportunidad de interpretar el alcance y la aplicación de dicho Canon 4, el Lcdo. Sigfrido Steidel Figueroa nos instruye sobre el particular:

> Objetivamente hablando, la idea de que el abogado contribuya al fortalecimiento del Derecho parece estar asociada a la noción de que el abogado debe cumplir sus responsabilidades de manera eficiente, con estudio riguroso y con fidelidad hacia

---

(5) *In re Sepúlveda, Casiano*, 155 DPR 193, 204 (2001) ("El Preámbulo del Código de Ética Profesional consigna el ideal del buen abogado").

su cliente. Si el rol del abogado es abogar, a partir del Derecho, a favor de las causas que asistan a una persona, al cumplir esa función, el abogado contribuye a la concreción de una sociedad más justa, y con ello, contribuye también al Derecho. Pero pudiéramos pensar que el fortalecimiento del Derecho *conlleva algo más*. Así, se pudiera plantear que el abogado contribuye al fortalecimiento del Derecho no sólo al cumplir su rol como abogado de una parte, sino también [...] promoviendo que la Judicatura se nutra de los mejores candidatos, *protegiendo y defendiendo las instituciones de justicia, entre otras*. (Énfasis suplido). S. Steidel Figueroa, *Ética y responsabilidad disciplinaria del abogado*, San Juan, Pubs. JTS, 2010, pág. 298.

Por su parte, el Canon 9 establece lo sucesivo:

El abogado debe observar para con los tribunales una conducta que se caracterice por el mayor respeto. Ello incluye la obligación de desalentar y evitar ataques injustificados o atentados ilícitos contra los jueces o contra el buen orden en la administración de la justicia en los tribunales. En casos donde ocurrieren tales ataques o atentados, el abogado debe intervenir para tratar de restablecer el orden y la buena marcha de los procedimientos judiciales.

El deber de respeto propio para con los tribunales incluye también la obligación de tomar las medidas que procedan en ley contra funcionarios judiciales que abusan de sus prerrogativas o desempeñan impropiamente sus funciones y que no observen una actitud cortés y respetuosa.

Al interpretar dicho Canon 9, hemos expresado que los abogados tienen "la obligación de desalentar y evitar ataques injustificados contra los jueces o el buen orden de la administración de la justicia, *pues nada bueno augura a nuestra sociedad si perdemos el respeto hacia nuestras instituciones, máxime cuando se trata de una institución que su razón de existir es hacer justicia*". (Énfasis suplido). *In re Guzmán Guzmán*, 181 DPR 495, 514 (2011). No hay duda de que "el respeto hacia los tribunales y la obligación de desalentar y evitar ataques injustificados contra los jueces no sólo están entre los pilares fundamentales sobre los que se erige nuestro código deontológico, sino que también sobre ellos descansa la buena marcha de los procedimien-

tos judiciales y la confianza que el público deposita en ellos". *In re Sánchez Ramos*, 174 DPR 453, 469 (2008). Por lo tanto, todos los abogados tienen el "deber— como celosos custodios de la imagen de la justicia— de observar una conducta que se caracterice por el mayor respeto hacia los tribunales". Íd. Véase, también, *In re Markus*, 158 DPR 881, 884 (2003) ("[los abogados] nunca deben olvidar que tienen la obligación de mantener y promover la imagen de la justicia").

En ese sentido, los abogados no tienen licencia "para poner en entredicho o mancillar la dignidad de los jueces". *In re Cardona Álvarez*, 116 DPR 895, 906–907 (1986). Específicamente, hemos indicado lo siguiente:

> Debe considerarse justa causa para imponer sanciones disciplinarias toda imputación, oral o escrita, de la comisión de hechos inmorales o ilegales, formulada por un abogado, que no esté respaldada (warranted) por evidencia competente, que tienda a degradar o a afectar la dignidad, honorabilidad e integridad de los tribunales o de sus funcionarios o que puedan debilitar o destruir el respeto a o la confianza pública en los mismos. *In re Andreu Ribas*, 81 DPR 90, 119 (1959).

En cuanto al ámbito de aplicación del Canon 9, este Tribunal ha expresado que "está dirigido a regir la conducta del abogado litigante en corte". *In re Gaetán y Mejías*, 180 DPR 846, 861–862 (2011). Véanse, también: *In re Busó Aboy*, 166 DPR 49, 66 (2005); *In re Saavedra Serrano*, 165 DPR 817, 829 (2005). Ahora bien, esas expresiones se hicieron en procesos disciplinarios contra jueces y con el único propósito de descartar la aplicación en su contra del canon. Ello surge claramente del análisis que plasmamos en *In re Gaetán y Mejías*, supra:

> De una simple lectura de este principio deontológico surge que se refiere a la conducta de los abogados ante los tribunales. Se trata de la imposición de un deber de comportamiento exclusivamente dirigido a los abogados y las abogadas, y no a los jueces y las juezas. De ahí que el canon imponga como deber que el abogado y la abogada desalienten ataques

injustificados contra los jueces y las juezas o el buen orden en la administración de la justicia y no viceversa. Es decir, el Canon no impone a los jueces y a las juezas el deber de desalentar ataques injustificados contra los mismos jueces y juezas o el buen orden en la administración de la justicia. El deber impuesto es exclusivo para los abogados.

El Canon 9 del Código de Ética Profesional, *supra*, establece que los abogados y las abogadas tienen el deber de velar por la conducta y el comportamiento de los funcionarios y las funcionarias judiciales, entre los cuales resalta evidentemente la figura del juez o la jueza. Por ende, del propio lenguaje del Canon 9 surge de forma conspicua que éste se diseñó para regular el comportamiento de los abogados y las abogadas con relación al tribunal y a los jueces y las juezas; no así el comportamiento de los jueces y las juezas.

De hecho, este Tribunal ha sostenido que este precepto está dirigido a regular la conducta del abogado litigante en corte. *In re Busó Aboy*, supra, pág. 66; *In re Saavedra Serrano*, supra, pág. 829. En *In re Saavedra Serrano*, supra, la conducta antiética imputada al licenciado Saavedra ocurrió mientras éste fungía como juez. Allí, la Oficina de Administración de los Tribunales presentó una querella en la que se le imputó al licenciado Saavedra haber violado, *inter alia*, el Canon 9 de Ética Profesional, *supra*. Empero, la Comisión de Disciplina y de Separación del Servicio por Razón de Salud de Jueces del Tribunal de Primera Instancia y del Tribunal de Circuito de Apelaciones determinó que no hubo violación a dicho canon porque éste había sido diseñado para regir la conducta de los miembros de la profesión legal en los tribunales y que, por lo tanto, no aplicaba a los jueces y a las juezas. Este Tribunal confirmó esa apreciación y sostuvo que el Canon 9 no le aplica a los jueces y las juezas; por ende, concluyó que las actuaciones del licenciado Saavedra no constituyeron violaciones al Canon. A igual conclusión llegó este Tribunal en *In re Busó Aboy*, supra.

Contrario a lo que plantean la licenciada Vélez Colón y la ex Procuradora General, nada de lo anterior sugiere que este Tribunal descartó la aplicación del Canon 9 a la conducta de los abogados fuera del litigio o de la práctica forense. Esa controversia nunca fue objeto de consideración. De ninguna forma este Tribunal avalaría el que los abogados pudiesen faltarles el respeto a los tribunales y atacarlos injustificadamente fuera de los procesos judiciales. Ello no

tendría algún sentido. Muy bien lo expresó el licenciado Steidel Figueroa en su obra:

> El abogado tiene la obligación de tratar de manera respetuosa a los jueces y a los funcionarios y empleados judiciales. Esta norma no se deriva exclusivamente de los Códigos de Ética Profesional. Es una norma de civilidad mínima que abarca todo el ámbito social. El deber de respeto de los tribunales "trasciende los formalismos de llamar [...] [a un juez] Honorable o Ilustrado". Este deber de civilidad, reconocido en el Código que regula los abogados en Puerto Rico, *se extiende a las relaciones formales e informales* entre los abogados y los jueces y demás empleados y funcionarios de la Rama Judicial. (Énfasis suplido). Steidel Figueroa, *op. cit.*, pág. 316.

Por último, el Canon 38 del Código de Ética Profesional, 4 LPRA Ap. IX, dispone lo siguiente:

> El abogado deberá esforzarse, al máximo de su capacidad, en la exaltación del honor y dignidad de su profesión, aunque el así hacerlo conlleve sacrificios personales y debe evitar hasta la apariencia de conducta profesional impropia. En su conducta como funcionario del tribunal, deberá interesarse en hacer su propia y cabal aportación hacia la consecución de una mejor administración de la justicia.

Al interpretar el Canon 38, *supra*, expresamos que todo abogado "debe actuar con el más escrupuloso sentido de responsabilidad que impone la función social que ejerce". *In re Toro Iturrino*, 190 DPR 582, 591 (2014). "[L]a mera apariencia igualmente lacera la imagen, la confianza y el respeto que nuestra sociedad deposita en la profesión y en las instituciones de la justicia". *In re Sierra Arce*, 192 DPR 140, 148 (2014).

V

En conformidad con los Cánones 4, 9 y 38 del Código de Ética Profesional, *supra*, así como con los deberes de su puesto como Directora de la OAT, la licenciada Vélez Colón estaba obligada a instituir y mantener un orden jurídico

íntegro y capaz que gozara de la completa confianza y apoyo de la ciudadanía, a proteger las instituciones de justicia, a evitar ataques injustificados contra los jueces, a aportar hacia una mejor administración de la justicia y a evitar hasta la apariencia de conducta impropia. No obstante, la licenciada Vélez Colón no cumplió con ninguna de estas obligaciones.

Sin justificación válida para ello y únicamente como secuela de las investigaciones que se estaban llevando a cabo contra el Hon. Federico Hernández Denton, la licenciada Vélez Colón inició una investigación contra los miembros de esta Curia. Dicho acto, lejos de ser inofensivo, constituyó un ataque injustificado contra los Jueces y las Juezas que en dicho momento componían este Tribunal, pues arrojó una inmerecida sombra de sospecha y puso en duda la honorabilidad e integridad de estos y estas ante el público.

Ahora bien, para escudar su responsabilidad, la licenciada Vélez Colón indica ante nos que nunca tuvo la intención de iniciar una investigación contra las y los miembros de este Tribunal, que conocía que no estaba facultada para ello y que la extensión de la investigación fue definida en el contrato.

Aunque no dudamos que la licenciada Vélez Colón conocía que no estaba facultada para iniciar una investigación contra las y los integrantes de esta Curia, surge de un examen del contrato que este contiene una conveniente definición laxa y escueta del tipo de investigación que el licenciado López Cintrón llevaría a cabo, a saber, "[una investigación] a la luz de los señalamientos públicos que recientemente se han formulado sobre el uso de recursos y fondos públicos en la Rama Judicial [...]". Informe de la Procuradora General, Anejo 1, pág. 1. Dicha definición es tan amplia que no descarta que la investigación se dirigiera a los Jueces y las Juezas de este Tribunal. De hecho, el licenciado López Cintrón, en la carta a través de la cual renunció al contrato, informó que como parte de los traba-

jos investigativos realizados hasta esa fecha le había solicitado evidencia al ex Juez Presidente, Hon. Federico Hernández Denton, sobre unas imputaciones en su contra. Es decir, la investigación sí incluiría a los miembros de este Tribunal.

Por otro lado, iniciar, sin facultades para ello, una investigación relacionada con unas imputaciones contra el Hon. Federico Hernández Denton —a quien esta respondía directamente—, creó, como mínimo, la apariencia impropia de que la licenciada Vélez Colón estaba utilizando el poder de su cargo y los fondos públicos para beneficiar solamente los intereses personales del honorable Hernández Denton y obstaculizar las investigaciones que se llevaban en su contra. Más allá, la licenciada Vélez Colón hizo unas expresiones desafiantes e intimidantes que hacían referencia a un aparente estado de guerra en la misma Rama Judicial. Al expresar que "cuando uno se mete a la guerra quizás no recibe un tiro, pero un raspacito viene[, a]sí que si hay raspazo, de eso se trata, de sanar y de curar", la licenciada Vélez Colón evidenció los propósitos defensivos y ofensivos de la investigación. Contrario a lo argüido por la ex Procuradora General en su Informe, en ninguna forma ello fomentó la transparencia y la buena imagen de los procedimientos de la Rama Judicial.

En fin, todos los actos de la licenciada Vélez Colón contribuyeron a perpetuar la desconfianza de los ciudadanos en los jueces y en las instituciones judiciales. Por lo tanto, estos no deben quedar impunes, más aún cuando esta cometió dichos actos mientras desempeñaba un puesto cuyo objetivo principal es asistir en la administración óptima de la Rama Judicial y de la Justicia. Sería muy peligroso y un mal precedente permitirle a una persona con semejante cargo en la Rama Judicial que actúe lacerando tanto nuestro sistema de justicia.

Ciertamente, cuando la credibilidad y la imagen de la Rama Judicial están en juego, el silencio y la inercia no son

opción. Sin lugar a dudas, existe una necesidad absoluta de trazar caminos que logren restaurar de manera efectiva la confianza de los ciudadanos en nuestro sistema de justicia. Para restaurar esa confianza, tenemos el compromiso ineludible de aprovechar cada oportunidad, por más sencilla que parezca, para descorrer el velo de la burocracia y rendirle cuentas al Pueblo.

En conformidad, si minimizamos los deberes éticos con los que debía cumplir la licenciada Vélez Colón y pasamos por alto sus actuaciones, contribuimos a la anulación de la fe y la confianza de los ciudadanos en nuestro sistema judicial. Véase *In re Hoffmann Mouriño*, 194 DPR 179, 181 (2015) ("No se pueden minimizar los deberes éticos, ya que permitirlo incide sobre la fe y la confianza en nuestro sistema judicial").

Por los fundamentos esbozados, *se censura enérgicamente a la licenciada Vélez Colón y se archiva la queja presentada en su contra.*

Lo acordó el Tribunal y lo certifica el Secretario del Tribunal Supremo. La Jueza Asociada Señora Pabón Charneco emitió un voto particular de conformidad, al cual se unió el Juez Asociado Señor Rivera García. La Jueza Presidenta Oronoz Rodríguez, la Juez Asociada Señora Rodríguez Rodríguez y el Juez Asociado Señor Colón Pérez emitieron, por separado, votos particulares disidentes. El Juez Asociado Señor Feliberti Cintrón disintió con la expresión siguiente:

> Por entender que ya este Tribunal se había expresado en relación con la promovida y entonces jueza, Lcda. Sonia I. Vélez Colón, y su papel en la situación particular que diera base a la presente queja,(6) opino que lo que procedía en estos momentos era *archivar la queja sin más.* Es decir, los hechos relacionados con esta queja ya eran un capítulo cerrado, y así debió permanecer este asunto. Por consiguiente, respetuosamente disiento

---

(6) Véanse: *In re Aprob. Rs. y Com. Esp. Ind.*, 184 DPR 575 (2012); *In re Miembros Com. Esp. Independiente*, 184 DPR 507 (2012); *In re Aprobación R. Proc. Esp. RJ*, supra.

de la determinación mayoritaria de este Tribunal para disponer de la queja presentada contra la licencia Vélez Colón.

*(Fdo.)* Juan Ernesto Dávila Rivera
*Secretario del Tribunal Supremo*

— o —

Voto particular de conformidad emitido por la Jueza Asociada Señora Pabón Charneco, al cual se une el Juez Asociado Señor Rivera García.

Aunque estoy completamente conforme con censurar enérgicamente a la licenciada Vélez Colón, entiendo que es menester expresarme brevemente sobre el lamentable trámite procesal de la queja ante este Tribunal.

La Regla 14(d) del Reglamento del Tribunal Supremo, 4 LPRA Ap. XXI-B, vigente a la fecha de la presentación de la queja, disponía claramente que cuando el abogado presentara su contestación a la queja disciplinaria, el Secretario remitiría la queja y la contestación "al Procurador o Procuradora General o al Director o Directora de la Oficina de Inspección de Notarías, respectivamente, para que, *dentro del término de treinta (30) días*", se expresaran sobre estas e hicieran la recomendación que estimaran pertinente. (Énfasis suplido).

En este caso, sin justificación alguna, se esperó más de cuatro (4) años para referir la queja a la entonces Procuradora General. La queja fue presentada el 6 de febrero de 2012 y no fue hasta el 8 de julio de 2016 que se refirió el expediente.[1] Dicha tardanza fue totalmente irrazonable e improcedente. La queja presentada contra la licenciada Vélez Colón debió atenderse con la misma rapidez y rigurosidad que todas las quejas que se presentaron en el 2012.

---

[1] Destacamos las diligencias realizadas por la Jueza Presidenta, Hon. Maite D. Oronoz Rodríguez, para que se continuaran los procedimientos encuanto a la queja de la licenciada Vélez Colón.

Ni su nombre ni el cargo que ocupaba la licenciada podían ser impedimento para ello.

Ciertamente, atender con prontitud las quejas disciplinarias que se presentan, independiente de quién sea el abogado, contribuye a la transparencia de los procedimientos y a la buena imagen de la Justicia. Como total defensora de un sistema que goce de la completa confianza y el apoyo de la ciudadanía, no me queda más que denunciar la tardanza injustificada en tramitar la queja de la licenciada Vélez Colón.

— O —

Voto particular disidente emitido por la Jueza Presidenta Oronoz Rodríguez.

No dudo que todos en este Tribunal deseamos un ordenamiento jurídico íntegro y eficaz; uno que goce de la confianza y apoyo completo de la ciudadanía. La Resolución que una Mayoría de este Tribunal emite hoy señala que "existe una necesidad absoluta de trazar caminos que logren restaurar de manera efectiva la confianza de los ciudadanos en nuestro sistema de justicia".[1] Nadie puede estar en desacuerdo con tal aseveración. Ahora bien, nunca estaré conforme ni guardaré silencio cuando se utilice el proceso disciplinario para coaccionar el respeto mediante censuras enérgicas a abogados que realicen actos o expresen posturas con las cuales personalmente discrepamos. Cuando juramenté como Jueza Asociada y como Jueza Presidenta reconocí la crisis institucional por la que atraviesa la Rama Judicial y el Tribunal Supremo. Dije entonces, y me reafirmo con una convicción mayor, que "[e]l momento que atravesamos es coyuntural para la reflexión, para observar a nuestro alrededor, calibrar y hacer una mirada introspectiva, severa y crítica, sin consideraciones o

---

[1] Resolución, pág. 592.

miedos".([2]) Más adelante añadí que "[n]o podemos temerle a que se nos cuestione y se nos critique. Por el contrario, tenemos que estar abiertos a recibir cualquier crítica constructiva y a esperar que la ciudadanía nos exija cuando no estemos cumpliendo nuestra función".([3]) Porque estoy convencida que la censura no es el mecanismo para atender esa crisis y porque, por el contrario, estas actuaciones de abuso de poder agudizan la crisis, disiento enérgicamente.

En este caso hay varias controversias jurídicas, algunas de las cuales no fueron atendidas por el Tribunal: (1) la legitimación activa de la promovente —*In re Sánchez Ramos*, 174 DPR 453 (2008)—; (2) la confidencialidad de los procesos disciplinarios —Regla 14 del Reglamento del Tribunal Supremo, 4 LPRA Ap. XXI-B—; (3) el alcance de los Cánones 4, 9 y 38 del Código de Ética Profesional, 4 LPRA Ap. IX, como normas disciplinarias; (4) la expansión de dicho alcance mediante una Resolución; (5) el debido proceso en su vertiente procesal, pues la queja únicamente imputó violación al Canon 9 y el expediente solo cuenta con el Informe de la Procuradora General; (6) la distribución constitucional de las facultades administrativas y reglamentarias, y (7) el acecho malsano a la libertad de expresión, la crítica y la investigación de la función y la administración pública, entre otras. Además, son muchísimas las razones por las cuales la Resolución del Tribunal es errónea en derecho. Ahora bien, enlistar esas faltas, como un árbitro en un partido concluido, nada cambia el resultado. Esta acción solo mantiene la juridificación de una controversia que hace mucho dejó de serlo. Por consiguiente, prefiero exponer por qué la censura del Tribunal es peligrosa y no se puede tolerar en una sociedad que se considere democrática.

---

([2]) *Ceremonia de Juramento de la Hon. Maite D. Oronoz Rodríguez*, 195 DPR vii, xxxvi (2016).

([3]) Íd., pág. xxxvii.

En resumen, la conducta "antiética" que se le imputó a la Lcda. Sonia I. Vélez Colón es la siguiente. Cuando fungía como Directora de la Oficina de la Administración de Tribunales (OAT) —bajo la presidencia del Hon. Federico Hernández Denton— contrató al Lcdo. César López Cintrón. Este realizaría una investigación independiente sobre el uso de fondos públicos en la Rama Judicial. Posteriormente, en una entrevista, la licenciada expresó que "cuando uno se mete a la guerra quizás no recibe un tiro, pero un raspacito viene. Así que si hay raspazo, de eso se trata, de sanar y de curar".

De lo anterior, la Mayoría deduce dos cosas: (1) que el que la exdirectora de la OAT investigara a los miembros del Tribunal Supremo, entre ellos al ex Juez Presidente, constituyó un ataque injustificado y (2) que iniciar, sin facultades para ello, una investigación en contra de su supervisor creó la apariencia impropia de que utilizó la investigación para obstaculizar las investigaciones de otras Ramas de gobierno. Finalmente, la Mayoría catalogó las expresiones de la licenciada como desafiantes e intimidantes.

Puedo entender que entre nosotros existan diferencias de criterio sobre si la exdirectora de la OAT tenía la facultad de realizar la investigación. También puedo comprender que algunos Jueces y algunas Juezas de este Tribunal estén molestos e insatisfechos por como se condujo la contratación y por algunas expresiones que se hicieron. Eso es natural en un cuerpo colegiado. Ahora bien, me alarma que la Mayoría utilice el proceso disciplinario para arremeter contra la licenciada, solo porque tienen una incomodidad personal con los hechos. A fin de cuentas, estamos expuestos —porque eso es vivir en una democracia— a que nuestros ciudadanos nos juzguen, nos critiquen (con o sin razón) y nos cuestionen. Eso también es bajarse del estrado y rendir cuentas a quienes único servimos. Una cosa es interpretar que la exdirectora de la OAT excedió sus facultades y hacer un juicio personal sobre cuáles fueron sus ra-

zones, y otra muy distinta es utilizar esas meras creencias personales, válidas o no, para disciplinar a Sonia I. Vélez Colón en su carácter de abogada.

¿Qué acto de la licenciada Vélez Colón es censurable? La contratación del licenciado López Cintrón para investigar el uso de fondos del País por la Rama Judicial, era parte ineludible de sus responsabilidades. Por otro lado, las expresiones hiperbólicas que trae la Mayoría —sin que la licenciada pueda defenderse— están protegidas clara y contundentemente por la libertad de expresión. La única imputación restante es que la licenciada presuntamente utilizó el proceso investigativo para beneficiar los intereses personales del Hon. Federico Hernández Denton. ¿Se probó esa imputación con prueba clara, robusta y convincente? Del expediente no surge la más mínima prueba de que esa fuera la intención. Todo se reduce a la apreciación personal de algunos miembros de este Tribunal. Ningún proceso judicial —mucho menos uno disciplinario— debe prestarse para eso.

Ante la arbitrariedad y la falta de justificación de una Mayoría, lo único que resta es analizar qué premisas subyacen la censura enérgica. La Resolución comienza citando las advertencias problemáticas de *In re Sánchez Ramos*, supra, pág. 469. Luego nos recuerda el "deber que tenemos todos los miembros de la profesión jurídica" de lograr "la completa confianza y el apoyo de la ciudadanía [...]".[4] Más adelante destaca que los actos de la licenciada "contribuyeron a perpetuar la desconfianza de los ciudadanos en los jueces y en las instituciones judiciales".[5] Entrelíneas podemos inferir el mensaje siguiente: si eres un abogado e investigas al Tribunal de manera que "arroj[e] una inmerecida sombra de sospecha"[6] o si te expresas de forma que se considere "desafiante e intimidante", te expones a una

---

[4] Resolución, pág. 576.

[5] Íd., pág. 591.

[6] Íd., pág. 590.

sanción disciplinaria. Peor aún, si afectas la confianza del Pueblo en la Rama Judicial, serás censurado o censurada enérgicamente por el Foro que debió ser garante de tu derecho a expresarte con libertad. Está de más decirlo, pero temo que estas advertencias disuadan a los abogados y a las abogadas de asumir una postura crítica y activa contra el Tribunal Supremo y la Rama Judicial. Como institución, debemos propiciar esta actitud y no desalentarla, incluso y especialmente cuando nos parezcan injustas o incómodas personalmente. Nuestro rol democrático así lo requiere.

En una columna titulada "Poder sin legitimidad", el profesor Efrén Rivera Ramos expuso:

> El Tribunal Supremo depende para su legitimidad de la fuerza de sus argumentos, del respeto que susciten sus decisiones, de la acogida que logre, en su conjunto, tanto en la comunidad jurídica como entre la población general. Si ese respeto se desvanece, sufre su legitimidad. Ese respeto, sin embargo, no puede simplemente exigirse, sin más. Se lo tienen que ganar los miembros del alto foro con su proceder.
>
> La pregunta que tienen que hacerse quienes gobiernan es de qué vale el control sin legitimidad. Podrá dejar beneficios inmediatos, pero pronto comenzará a perder terreno político y moral.
>
> Cuando lo que importa es el poder por el poder mismo, eventualmente se tendrá que recurrir a la coacción para conservarlo. Y la coacción cruda a la larga genera mayor erosión de la legitimidad. Ello conduce inevitablemente a una gran soledad. La soledad del poder a secas.

Hoy, una mayoría optó por exigir el respeto a golpes, en lugar de ganárselo. En vez de restaurar la confianza, la perdió de nuevo. Al censurar el supuesto efecto de la licenciada Vélez Colón en la confianza y el apoyo de la ciudadanía, comete el mismo acto que pretende reprobar. Recurre, pues, al poder coercitivo que otorgan cinco votos para conseguir una legitimidad artificial, censurando a los abogados y las abogadas que asuman su rol de manera distinta al predeterminado por el Tribunal Supremo. Solo restauraremos la confianza cuando dejemos de ejercer el poder a

secas, solo porque contamos con cinco votos y los deseos de censurar por riñas del pasado.

— O —

Voto particular disidente emitido por la Juez Asociada Señora Rodríguez Rodríguez.

No suelo destacar lo obvio. De ordinario, señalar lo "harto conocido" es innecesario. Se torna superfluo. Pero a veces, ante pronunciamientos que constituyen abstracciones injustas del Derecho, no queda otra alternativa que repasar lo elemental.

*Es obvio*, como asunto de umbral, que la Lcda. Zaida Hernández Torres, quejosa en el procedimiento de autos, no tenía legitimación alguna para presentar una queja contra la Lcda. Sonia Ivette Vélez Colón por los hechos alegados. Ya hemos establecido, en más de una ocasión, que una parte promovente en un proceso disciplinario es aquella que ha impulsado la queja disciplinaria y que, a su vez, tiene conocimiento personal y legitimación activa con relación a la queja. *López Feliciano, Ex parte*, 191 DPR 882, 891–892 (2014); *In re MMT, MITA y LST*, 191 DPR 668, 675 (2014). La Jueza Asociada Pabón Charneco abundó sobre ello al explicar que "una 'parte promovente' es aquella que promueve o impulsa una acción disciplinaria por haber estado directamente involucrada en los sucesos que motivaron la presentación de una Queja". *In re MMT, MITA y LST*, supra, pág. 677 (Op. conformidad, Pabón Charneco, J.). El requisito de legitimación activa en los procedimientos disciplinarios garantiza que el procedimiento disciplinario lo utilizarán personas que tienen un interés real y justificado en ver disciplinado a un abogado. *López Feliciano, Ex parte*, supra, pág. 892. Como sabemos todos, la licenciada Hernández Torres no tenía relación al-

guna con las alegaciones que plasmó en su queja.([1]) Su único interés en la controversia, a mi entender, fue su discusión sobre ésta a través de su programa radial de análisis político. Difícilmente podríamos llamarle a eso "legitimación activa".([2])

*Es obvio*, además, que el Canon 9 del Código de Ética Profesional no da para tanto. La función específica de este canon, como lo hemos interpretado reiteradamente, es regular la conducta de los abogados ante los foros judiciales. Los ejemplos sobran. Véanse, por ejemplo: *In re Gaetán y Mejías*, 180 DPR 846 (2011); *In re Busó Aboy*, 166 DPR 49 (2005); *In re Saavedra Serrano*, 165 DPR 817 (2005).([3]) La licenciada Vélez Colón, en su labor como Directora de la Oficina de Administración de los Tribunales, no estaba en posición de incurrir en una violación al Canon 9. La plasticidad que hoy se le imparte este canon, nuevamente, sin justificación jurídica razonable, me obliga a recordarle a la mayoría el viejo refrán: "Mucho estirar hace quebrar".

*Es obvio*, por último, que constituye una burda violación al debido proceso de ley imputarle a una querellada la violación de dos cánones de ética profesional sin que la ale-

---

([1]) Por otro lado, si bien el Canon 7 de Ética Judicial otorga legitimación a los jueces para promover procedimientos *cuando los hechos les consten personalmente*, 4 LPRA Ap. IV-B, la licenciada Hernández Torres ya no es juez ni acreedora de esa legitimación estatutaria.

([2]) ¿Qué explicación razonable hay para el relajamiento de este requisito? No sabemos. No lo explica la Resolución ni la Jueza Asociada Pabón Charneco en su Opinión de conformidad. La ausencia de explicación, ¿implica arbitrariedad?

([3]) Aún si fuéramos a extender la aplicación del Canon 9 del Código de Ética Profesional a toda la práctica profesional de la abogacía, y, más allá, aún si consideráramos que la labor administrativa que ejercía la licenciada Vélez Colón como Directora de la Oficina de Administración de los Tribunales era una práctica profesional de la abogacía, el razonamiento del Tribunal se queda corto. Se queda corto porque ignora por completo los criterios que hemos elaborado, hace ya décadas, para examinar la conducta de los abogados cuando critican a o mancillan la reputación de los tribunales. Para ello, hemos desarrollado tres criterios, a saber: (1) si aunque equivocado, el abogado creía en la validez de las imputaciones, (2) si aunque los hechos no eran ciertos, tenía motivos fundados o causa probable para creer que eran veraces y (3) si la imputación no fue hecha maliciosamente con el propósito deliberado de mancillar la reputación del tribunal. *In re Crespo Enríquez*, 147 DPR 656, 664 (1999); *In re Cardona Álvarez*, 116 DPR 895, 907 (1986); *In re Martínez, Jr.*, 108 DPR 158, 163 (1978); *In re Andreu Ribas*, 81 DPR 90, 120 (1959).

gada violación de éstos figurara en etapa alguna del procedimiento disciplinario. Más que burda, esta acción está encontrada con los valores elementales de juego limpio. Hemos resuelto repetidamente que el abogado tiene un interés propietario en el ejercicio de su profesión, por lo cual son acreedores de las garantías que ofrece la vertiente procesal del debido proceso de ley. *In re Rodríguez Plaza*, 182 DPR 328, 341 (2011); *In re Ríos Ríos*, 175 DPR 57, 74–75 (2008). Pertinentemente, en *In re Pérez Riveiro*, 180 DPR 1 93, 200 (2010), declaramos que:

> [L]a práctica de enmendar tácitamente la querella, a base de la prueba presentada, para sancionar a un abogado por violaciones al Código de Ética Profesional que no fueron imputadas en la querella es incompatible con la naturaleza de los procedimientos disciplinarios de los abogados y viola el debido proceso de ley.

La Resolución que suscriben cinco jueces discute extensamente los Cánones 4 y 38, 4 LPRA Ap. IV-B C. 38, sin que éstos figuraran en la queja original de la licenciada Hernández Torres o en el Informe rendido por la Procuradora General. La Resolución concluye que la querellada incumplió con las obligaciones impuestas por estos cánones. Llegar a esa conclusión a base de conjeturas, sin darle una oportunidad a la licenciada Vélez Colón para defenderse, es una crasa violación del debido proceso de ley y desdice de quienes suscriben tal Resolución.[4]

No debería tener que recordarle a la mayoría que la legitimación activa y el debido proceso de ley son axiomas elementales de nuestro sistema de Justicia. Considero que no

---

[4] Este caso refleja un proceso más propio de los llamados *kangaroo courts* que aquellos que deben primar en un ordenamiento donde el imperio de la ley sea un valor estimable. Tal vez contagiados por el recuerdo del 14 de julio de 1789, que hoy conmemoramos, se quiso llevar a la guillotina a la licenciada Vélez Colón. *À propos*, resulta curioso que los Jueces que están conformes con la censura que hoy autoriza el Tribunal decidieran manifestar su sentir mediante una Resolución y no una Opinión *per curiam*. ¿Será que son conscientes del nefasto precedente que de otra manera establecerían? Sobre ello, solo observo que sientan otro precedente más perverso al permitir excepciones arbitrarias en casos de especial interés, apartándose de principios fundamentales cuando el afán de castigo ciega la razón.

procedía ignorarlos, de manera acomodaticia, en el procedimiento contra la licenciada Vélez Colón. Por lo demás, las conclusiones de hecho y de derecho que hace el informe de la Procuradora General disipan cualquier duda sobre la eticidad de la conducta de la licenciada Vélez Colón. Consecuentemente, lo anejo de forma íntegra a mi voto disidente.

A manera de conclusión, invito a mis compañeros a reflexionar sobre su función. El poder temporero que como jueces detentamos no puede utilizarse para mancillar reputaciones ni para ajustes de cuentas. No hay cualidad más apremiante e imprescindible que la imparcialidad. La Justicia y la parcialidad no van nunca de la mano. El juez tiene que ser capaz de colocarse por encima de las partes, en plano trascendente, para lograr impartir justicia cumplida. Pero tiene también que depurarse de sus pasiones y desterrar todo género de motivaciones subjetivas, pues "[s]i la pasión [le] turba, si cualquier hostilidad [le] emponzoña",(5) habrá fracasado en su ministerio y su dictamen no podrá ser jamás justo e imparcial.

En consideración a todo lo anterior, disiento.

---

(5) F. Soto Nieto, *Compromiso de justicia*, 1977, pág. 358.

# ANEJO

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| In re: | | Sobre: |
|---|---|---|
| **Lic. Sonia I. Vélez Colón** | AB-2012-046 | Conducta Profesional |

### INFORME DE LA PROCURADORA GENERAL

**AL HONORABLE TRIBUNAL:**

Comparece la Oficina de la Procuradora General de Puerto Rico, y muy respetuosamente **EXPONE** y **SOLICITA:**

El 8 de julio de 2016, este Honorable Tribunal refirió a nuestra oficina copia del expediente del caso de epígrafe para que se realizara, a tenor con la Regla 14(d) de su Reglamento, la investigación e informe correspondiente. Presentamos hoy nuestro informe y recomendación.

## I. TRANSFONDO FÁCTICO

### A. ALEGACIONES DE LA PROMOVENTE

El 6 de febrero de 2012, la licenciada Zaida R. Hernández Torres presentó la queja de epígrafe en contra de la licenciada Sonia I. Vélez Colón por una alegada violación al Canon 9 de Ética Profesional. En síntesis, la promovente sostiene que mientras la Lcda. Vélez Colón ejercía como Directora Administrativa de los Tribunales, esta última ordenó una investigación en contra de todos los jueces de este Honorable Foro con el propósito de distraer la atención sobre las alegaciones que dos alguaciles habían hecho sobre el uso y aprovechamiento ilícito de bienes y servicios pertenecientes al Estado por parte del entonces Juez Presidente, Federico Hernández Denton, y de la correspondiente investigación por parte de los órganos competentes.

La promovente alega que la contratación del Lcdo. César López Cintrón por parte de la entonces Directora Administrativa de los Tribunales para que realizara una investigación sobre los miembros del Tribunal Supremo fue *ultra vires*, ya que le corresponde al Poder Ejecutivo y al Legislativo realizar dicha investigación y no a ella, quien era una empleada de confianza del Juez Presidente. Además, apuntala que la actuación de la promovida constituye un ataque injustificado a los restantes miembros de este Alto Foro, ya que no existía razón alguna para investigarlos porque no existían alegaciones en su contra. La promovente entiende que dicha conducta viola el Canon 9 de Ética Profesional. Asimismo, la promovente arguye que la licenciada Vélez Colón se proponía con la investigación, conocer de primera mano quiénes

serían las personas que testificarían en contra del entonces Juez Presidente, para influenciarlas y presionarlas.

### B. ALEGACIONES DE LA PROMOVIDA

En su contestación, la licenciada Vélez Colón acepta haber otorgado el contrato en cuestión. Arguye que contrató al licenciado López Cintrón para que condujera una investigación independiente acerca de los señalamientos públicos hechos por los dos alguaciles, ya que a su entender se trataba de asuntos que impactaban el funcionamiento de la Oficina de Administración de Tribunales. Señala que no era la primera vez que se hacía este tipo de investigación independiente concurrente a la de otras pesquisas por otras ramas del gobierno. Alega que su intención no era realizar una investigación sobre los miembros del Tribunal Supremo ni atacar a sus jueces, ya que reconoce el alcance de las prerrogativas estatutarias y constitucionales de su cargo. Sostiene que el contrato se limitaba a los señalamientos públicos formulados por los alguaciles en cuanto al uso de fondos públicos. No obstante, el 1ro de febrero de 2012, este Honorable Foro ordenó la recisión del contrato y aprobó las Reglas para los Procedimientos de Investigaciones Especiales Independiente de la Rama Judicial, por entender que este tipo de investigaciones no se encuentra dentro de las prerrogativas de la Directora Administrativa de los Tribunales, sino exclusivamente dentro de la de los jueces y juezas del Tribunal Supremo. *Véase In re Aprobación de las Reglas para los Procedimientos de Investigaciones Especiales Independientes de la Rama Judicial*, 184 D.P.R. 500 (2012).

La promovida argumenta que no violó el Canon 9. Primeramente, sostiene que según la Orden Administrativa OA-JP-2009-108, sus funciones son judiciales ya que conlleva, entre otras, la recomendación sobre traslados y asignación de jueces, así como la toma de medidas para la mejor utilización de los recursos judiciales. Entiende la promovida que el procedimiento a seguir es el procedimiento disciplinario para juezas, y no el establecido para las abogadas; ya que esta ostentaba el cargo de jueza y su puesto en la Oficina de Administración de Tribunales tenía carácter judicial.[1] Añade además, que el Canon 9 es inaplicable, ya que según *In re Gaetán y Mejías*, 180 D.P.R. 846, 861 (2011), este Foro ha establecido que el Canon 9 no es de aplicación a las juezas, sino exclusivamente a las abogadas. En la alternativa, la promovida arguye que si se entiende que ella realizó sus acciones dentro del ámbito profesional de la abogacía, tampoco se

---

[1] Tras 26 años en la Rama Judicial, la entonces jueza administradora de la Oficina de Administración de los Tribunales, Sonia Ivette Vélez, renunció a su puesto y su posición como jueza en el Tribunal de Apelaciones, efectivo el 15 de octubre de 2014. *Véase, Comunicado de Prensa de la Rama Judicial del 25 de septiembre de 2014*, ANUNCIA LA JUEZA PRESIDENTA FIOL MATIA CAMBIOS EN LA DIRECCIÓN DE LA OAT, *disponible en* http://www.ramajudicial.pr/Prensa/comunicados/2014/09-25-14.html.

configuró una violación al Canon 9. Sostiene la letrada que el Canon 9 es de aplicación exclusiva a la conducta del abogado litigante en corte, según se desprende del propio texto del Canon y su jurisprudencia interpretativa. Por tanto, la promovida solicita el archivo de la queja.

Por último, la licenciada Vélez Colón intima que la promovente violó la confidencialidad del procedimiento disciplinario al comentar en su programa de radio "El malletazo" que había presentado una queja en contra de la promovida, antes que la queja fuera ni siquiera notificada a esta última. La letrada entiende que según la Regla 14(r) de este Tribunal, la licenciada Hernández Torres tenía que respetar la confidencialidad del procedimiento, que sólo se convierte en público tras la contestación de la querella. Intima que esta inobservancia debe abonar a su solicitud de archivo, pues dicha conducta desvirtúa los propósitos del procedimiento disciplinario.[2]

## II. ANÁLISIS

En casos disciplinarios contra miembros del gremio de abogados se podría afectar el derecho de estos a ganarse el sustento. Este derecho a un empleo, a devengar ingresos, y a tener una vida justa y decente, es un principio inalienable al hombre, preexistente a la más antigua de las constituciones conocidas. *Amy v. Adm. del Deporte Hípico*, 116 D.P.R. 414, 421 (1985). Por tanto, en este tipo de pleitos este Honorable Tribunal ha establecido que se requiere una carga probatoria más acuciosa que la mera preponderancia de la prueba. *In re Rodríguez Mercado*, 165 D.P.R. 630, 641 (2005).

Este *quatum* de prueba es el de prueba clara, robusta y convincente, no afectada por reglas de exclusión, ni a base de conjeturas. *In re Rodríguez Mercado*, 165 D.P.R. 630, 64 (2005); *In re Caratini Alvarado*, 153 D.P.R. 575, 584-85 (2001). Sin embargo, si bien la carga de la prueba es mayor a la utilizada en los casos civiles, ésta no alcanza el criterio tan estricto de "más allá de duda razonable" utilizado en los casos criminales. *Caratini Alvarado*, 153 D.P.R. en la pág. 578.

> La prueba clara, robusta y convincente es aquella mucho más sólida que la preponderancia de la evidencia, pero menos rigurosa que la prueba más allá de toda duda razonable. Aunque el referido estándar de prueba no es susceptible de

---

[2] Aunque no hay una alegación de violación ética de la promovida en contra de la promovente, entendemos meritorio aclarar que el Reglamento de este Tribunal provee que "los informes de investigación y los documentos de la Oficina del Procurador General, del Colegio de Abogados de Puerto Rico o de cualquier otro organismo o persona que se presenten en la Secretaría del Tribunal con tal fin, o ante la consideración del Juez Presidente o Jueza Presidenta o del Tribunal, no estarán sujetos a inspección por el público hasta que el asunto haya sido resuelto finalmente", Regla 14(q), Reglamento del Tribunal Supremo, y que "[u]na vez presentada en la Secretaría del Tribunal la contestación a una querella formal, ambos documentos estarán sujetos a inspección pública, al igual que aquellos otros que se incorporen subsiguientemente al expediente durante la tramitación del caso". Regla 14(r), Reglamento del Tribunal Supremo. No existe una prohibición expresa de que se mencione en público, el hecho de la presentación de una queja.

una definición precisa, la prueba clara, robusta y convincente ha sido descrita como aquella evidencia que produce en un juzgador de hechos una convicción duradera de que las contenciones fácticas son altamente probables.

*In re Rodríguez Mercado*, 165 D.P.R. en la pág. 641.

Asimismo, este Honorable Tribunal ha sido enfático en señalar que debido a que en estos procesos está en juego el título de un abogado y, por ende, su derecho fundamental a ganarse su sustento, los Cánones de Ética Profesional "no son, ni deben convertirse, en armas procesales . . . a ser utilizadas para adelantar los intereses particulares de una de las partes en un caso". *In re Fernández Torres*, 122 D.P.R. 859, 861 (1988). Así tampoco puede permitirse que se utilice el mecanismo disciplinario para "saciar la sed de venganza que [se tiene en] contra [de] un miembro de la profesión". *In re Vélez Lugo*, 162 D.P.R. 735, 740 (2004). Esos no son los propósitos de los procedimientos disciplinarios, sino que se trata de proteger al público y a la profesión legal. *In re Sánchez Ramos*, 174 D.P.R. 453, 466-67 (2008). "Por lo que toda pretensión ajena a dicho propósito no será motivo para que este Foro emprenda la delicada encomienda de sancionar disciplinariamente a un abogado". *Id.*

Aclarado lo anterior, ante las alegaciones de la promovida, nos corresponde determinar primeramente cuál es el procedimiento que debe aplicar en el caso de epígrafe y cuáles son los Cánones de Ética a utilizarse en la evaluación de sus acciones si los de Ética Profesional o los de Ética Judicial. Como mencionáramos, la licenciada Vélez Colón renunció a su cargo como Directora Administradora de los Tribunales y a su posición como jueza en el Tribunal de Apelaciones efectivo el 15 de octubre de 2014. Este Foro ha establecido que una vez una jueza renuncia a su puesto, su término expira, no es renominada o se le separa del cargo, no se pueden continuar procesos disciplinarios bajo los Cánones de Ética Judicial. *In re Gaetán y Mejías*, 180 D.P.R. en las págs. 856-57; *In re Suárez Marchán*, 159 D.P.R. 724, 735 (2003); *In re Campoamor Redín*, 150 D.P.R. 138, 149 (2000); *In re Liceaga*, 82 D.P.R. 252, 257 (1961). Sin embargo, dichos hechos no impiden que este Tribunal pase juicio sobre aquellas acciones en las que incurrió mientras fungía como jueza si la naturaleza de la conducta imputada puede dar lugar al desaforo, a la suspensión de la abogacía o a otras medidas disciplinarias. *Id.* Ya que en la actualidad la promovida no ostenta el cargo de jueza, sus acciones, independientemente de si su puesto de Directora Administrativa de los Tribunales era de carácter judicial,[3] deben ser

---

[3] A pesar de no ser necesario en esta etapa de la queja, deseamos aclarar que el resultado hubiera sido el mismo aún si la letrada siguiera en su puesto de Directora Administradora de los Tribunales y en su posición como jueza en el Tribunal de Apelaciones, ya que sus acciones se dieron dentro del marco de gestión frente a la Oficina de Administración de los Tribunales. Dicho cargo, no es un cargo judicial, si bien se le otorga la facultad de

evaluadas por los Cánones de Ética Profesional y el procedimiento provisto para ello en el Reglamento de este Tribunal.

Atendido ese asunto, procedemos a evaluar los planteamientos de violación ética presentada por la promovente. En síntesis, la licenciada Hernández Torres alega que la acción de la entonces Directora Administrativa de los Tribunales de contratar al licenciado López Cintrón para que condujera una investigación independiente acerca de los señalamientos públicos hechos por los dos alguaciles, fue una acción *ultra vires* que constituyó un ataque injustificado a los miembros de este Alto Foro en violación al Canon 9 de Ética Profesional. Entendemos que no le asiste la razón a la promovente.

En primer lugar, el asunto de si se trataba de una acción ultra vires fue atendido por este tribunal en *In re Aprobación de las Reglas para los Procedimientos de Investigaciones Especiales Independientes de la Rama Judicial*, 184 D.P.R. 500 (2012). Este Tribunal dispuso del remedio que entendió adecuado al respecto. Por tanto, ese aspecto de la queja está fuera del ámbito disciplinario, ya que se trata de un asunto legal sobre si la licenciada en su cargo de Directora Administrativa de los Tribunales podía iniciar una investigación sobre las actuaciones de los miembros de esta Curia.

En cuanto al ataque injustificado a los miembros de este Tribunal, el Canon 9 sobre conducta del abogado ante los tribunales provee:

> El abogado debe observar para con los tribunales una conducta que se caracterice por el mayor respeto. Ello incluye la obligación de desalentar y evitar ataques injustificados o atentados ilícitos contra los jueces o contra el buen orden en la

---

recomendar sobre traslados y asignación de jueces, así como la toma de medidas para la mejor utilización de los recursos judiciales.
Esto se puede colegir claramente de una simple lectura de varios artículos de la Ley de la Judicatura. Por ejemplo, el Artículo 2.012 establece que:

> Todo juez que sea designado para ocupar un puesto como funcionario de confianza en el servicio central de la Rama Judicial, como lo es el de Director Administrativo de los Tribunales y aquellos otros puestos que determine el Juez Presidente que no sean incompatibles con el cargo de juez, podrá servir por más de un (1) año en la posición de confianza y quedará relevado de sus funciones judiciales pero retendrá, a todos los fines pertinentes a su cargo, la condición y derechos de juez mientras desempeñe las funciones asignadas.

(énfasis suplido).
Por otra parte, el Artículo 2.016 de la misma ley dispone que "[e]l Director Administrativo de los Tribunales deberá ser abogado admitido al ejercicio de la abogacía, será nombrado por el Juez Presidente y desempeñará su cargo a discreción de dicho magistrado." (énfasis suplido). El que sólo se requiera para el cargo Directora Administradora de los Tribunales el estar admitida al ejercicio de la abogacía, que se especifique que de ser jueza se quedará relevada de dichas funciones, y que ninguna de las facultades de las juezas enumeradas en el artículo 2.017 (*inter alia*, hacer cumplir las sentencias, órdenes y providencias, así como las órdenes que dicte un juez fuera del estrado, en acciones o procedimientos pendientes ante los tribunales; ordenar la comparecencia de personas que hayan de prestar declaración en un procedimiento ante su consideración; recibir juramentos en procedimientos pendientes ante ellos y en todos los casos en que lo requiera el ejercicio de sus poderes y deberes; inspeccionar y corregir sus providencias y órdenes con el fin de ajustarlas a la ley y la justicia; recibir y certificar la constancia del cumplimiento de la sentencia o fallo de un tribunal; y castigar por desacato) sea ejercida por la Directora Administradora de los Tribunales en su puesto, demuestra que no es un cargo judicial. De ser un cargo judicial, se requeriría que la persona que lo ostente sea jueza. El hacer recomendaciones sobre cargos judiciales no se puede igualar a la facultad de la Jueza Presidenta de realizar dichos cambios o designaciones, que están dentro de las competencias judiciales de esta última.

administración de la justicia en los tribunales. En casos donde ocurrieren tales ataques o atentados, el abogado debe intervenir para tratar de restablecer el orden y la buena marcha de los procedimientos judiciales.

El deber de respeto propio para con los tribunales incluye también la obligación de tomar las medidas que procedan en ley contra funcionarios judiciales que abusan de sus prerrogativas o desempeñan impropiamente sus funciones y que no observen una actitud cortés y respetuosa.

4 L.P.R.A. Ap. IX C. 9 (West 2015).

Si bien este Alto Foro ha reconocido que bajo el Canon 9 los letrados poseen ciertas obligaciones que no pueden eludir, el campo de acción de este precepto es muy limitado. El Canon 9 opera cuando se trata de asuntos estrictamente relacionados a la práctica profesional de la abogacía. *In re Busó Aboy*, 166 D.P.R. 49 (2005). Es por ello, que este Tribunal determinó que la conducta de una jueza de llenar un formulario falso y decir mentiras en relación a un boleto de tránsito, **no constituyó una violación bajo este canon.** *Id.*

El campo de acción del Canon 9 se puede dividir en tres grandes grupos. En primer lugar, el Canon 9 opera cuando se trata de asuntos relacionados a los deberes de las abogadas para mantener la licencia profesional. *In re Villamil Higuera*, 188 D.P.R. 507 (2013) (incumplir con los requisitos del Programa de Educación Jurídica Continua, no informar a la Secretaría los cambios de dirección, y no atender los requerimientos del Tribunal Supremo). En segundo lugar, se encuentran los deberes de las letradas durante los procedimientos disciplinarios éticos. *In re Rivera Trani*, 188 D.P.R. 454, (2013) (no contestar diligentemente los requerimientos del Tribunal Supremo relacionados con la práctica profesional o procedimiento disciplinario); *In re Fontánez Fontánez*, 181 D.P.R. 407 (2011) (ejercer deficientemente el notariado, hacer caso omiso a las órdenes del Tribunal Supremo para subsanar deficiencias, y practicar la notaría mientras se está suspendido); *In re Lassalle Pérez*, 153 D.P.R. 368, 372 (2001) (incumplir con los requerimientos de la *Oficina de la Procuradora General* en procesos disciplinarios). Por último, el Canon 9 regula aquella conducta dirigida a mancillar el honor de los tribunales y de las juezas durante el ejercicio de la práctica forense. *In re Valentín Custodio*, 187 D.P.R. 529 (2012) (no tramitar los casos con puntualidad, diligencia y respetando las órdenes Comisión Apelativa de Servicio Público); *In re Guzmán*, 181 D.P.R. 495 (2011) (hacer alegaciones falsas en beneficio del cliente en una petición de habeas corpus); *In re González Carrasquillo*, 164 D.P.R. 813 (2005) (desobedecer las instrucciones del juez de no interferir en las contestaciones de un cliente); *In re Markus*, 158 D.P.R. 881 (2003) (mostrar una actitud irrespetuosa al Tribunal de

Apelaciones en un recurso de *certiorari* al Tribunal Supremo); *In re: Crespo Enríquez*, 147 D.P.R. 656 (1999) (utilizar lenguaje soez para adelantar los intereses de cliente).

Como se puede colegir, la actuación de la licenciada Vélez Colón no ocurrió en el transcurso de su práctica forense, relacionada con el mantenimiento de su licencia profesional o en el trascurso de un procedimiento disciplinario. Por tanto, no está dentro del ámbito del Canon 9.

Aún si lo estuviera, no sería una conducta violatoria del Canon 9. Las conductas que este Tribunal ha sancionado como violatorias de este canon se circunscriben a acciones vejatorias, desafiantes, fraudulentas, de imputaciones de conducta antiética sin fundamento en contra de un juez o que ponen en entredicho la sana administración de la justicia; siempre dentro del ámbito de un litigio. *In re López Montalvo*, 173 D.P.R. 193 (2008) (utilizar un sobre diferente al real para intentar acreditar la jurisdicción al foro apelativo); *In re Rodríguez Rivera*, 170 D.P.R. 863 (2007) (utilizar lenguaje soez en contra de una secretaria del tribunal en el curso de un trámite referente a un señalamiento de una vista); *In re López de Victoria Brás*, 163 D.P.R. 1 (2004) (imputar prejuicio y parcialidad al juez sin fundamentar debidamente esas alegaciones); *In re Rodríguez Santiago*, 157 D.P.R. 26 (2002) (negarse en cinco ocasiones a suministrar dirección para una designación de oficio); *In re Rivera García*, 147 D.P.R. 746 (1999) (atacar la imparcialidad de los jueces de la región judicial en los casos en los cuales el cónyuge de la Jueza Administradora litigaba); *In re Rivera Carmona*, 114 D.P.R. 390 (1983) (expresarle falsamente a clientes que se cobra dinero para sobornar a un juez). El ordenar una investigación sobre el uso de fondos públicos cuando existen alegaciones públicas al respecto no es una acción vejatoria, desafiante, fraudulenta, que impute conducta antiética sin fundamento en contra de un juez o que ponga en entredicho la sana administración de la justicia. Por el contrario, es un intento de mantener la transparencia de la Rama Judicial ante el público.

Contrario a lo que sostiene la promovente, el contrato que otorgó la Lcda. Vélez Colón como Directora Administrativa de los Tribunales no imputaba acciones antiéticas a los miembros de esta Respetable Curia. Se desprende de la Exposición y la Cláusula Primera del contrato, que el objeto del contrato era investigar el uso de recursos y fondos públicos en la Rama Judicial a la luz de los señalamientos públicos que se habían hecho. No se hace ninguna alegación sobre miembro en específico de este Alto Foro. *Véase* Anejo 1. Por tanto, no podemos concluir que se trata de imputaciones falsas y malogradas en contra de los jueces y juezas de este Tribunal.

∎

Tampoco podemos concluir, como arguye la promovente, que la licenciada Vélez Colón se proponía con la investigación, conocer de primera mano quiénes serían las personas que testificarían en contra del entonces Juez Presidente, para influenciarlas y presionarlas. No existe prueba alguna sobre ello en el expediente.

## IV. RECOMENDACIÓN

En síntesis, entendemos que de un análisis del expediente se desprende que las actuaciones de la promovida se dieron fueran del contexto de la práctica forense, por lo que no hubo violación alguna al Canon 9 de Ética Profesional. Más aún, el ordenar una investigación sobre el uso de fondos públicos por miembros de este Honorable Tribunal cuando existen alegaciones públicas al respecto, no puede construirse como un ataque a la función judicial. Por tanto, no procede que este Tribunal ejerza su jurisdicción disciplinaria en este caso.

**EN MÉRITO DE LO CUAL,** muy respetuosamente solicitamos de este Ilustre Foro que tome conocimiento de la información que antecede y proceda con el archivo de la queja.

**RESPETUOSAMENTE SOMETIDO.**

En San Juan, Puerto Rico, a 3 de agosto de 2016.

## NOTIFICACIÓN

*CERTIFICO*: Haber enviado copia fiel y exacta de este *Informe* por correo certificado a las siguientes personas:

> **Lcdo. Guillermo Figueroa Prieto**
> P.O. Box 191194
> San Juan, P.R. 00919-1194
>
> **Lcda. Zaida R. Hernández Torres**
> Monte Lago Estate
> 8 Calle Magorie
> Toa Alta, P.R. 00953-7401
>
> **Lcda. Sonia I. Vélez Colón**
> Alturas de San Patricio
> Calle Belén Número 9
> Guaynabo, PR 00968-0917

En San Juan, Puerto Rico, a 3 de agosto de 2016.

MARGARITA MERCADO ECHEGARAY
Procuradora General
T.S. Núm. 16266
Departamento de Justicia
PO Box 9020192
San Juan, Puerto Rico 00902-0192
Tel. 787-724-2165
Fax 787-724-3380
marmercado@justicia.pr.gov

2012-000143    ANEJO 1

Estado Libre Asociado de Puerto Rico
TRIBUNAL GENERAL DE JUSTICIA
Oficina de Administración de los Tribunales
San Juan, Puerto Rico

### CONTRATO DE SERVICIOS PROFESIONALES Y CONSULTIVOS

-----------------------------------------COMPARECEN----------------------------------------------

----DE LA PRIMERA PARTE: La Oficina de Administración de los Tribunales, una dependencia del Tribunal General de Justicia del Estado Libre Asociado de Puerto Rico creada en virtud de la Ley Núm. 201 de 22 de agosto de 2003, según enmendada, número de identificación patronal 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, representada en este acto por la Directora Administrativa de los Tribunales, Sonia Ivette Vélez Colón, mayor de edad, casada, abogada y vecina de Guaynabo, Puerto Rico; en adelante denominada la Primera Parte.-------------------------------------------------------------------------------------

----DE LA OTRA PARTE: Ledo. César López Cintrón, mayor de edad, casado, abogado y vecino de Juncos, Puerto Rico, número de seguro social 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 en adelante denominado la Segunda Parte.--------------------------------------------------------

----AMBAS PARTES certifican tener la capacidad legal necesaria para el otorgamiento de este contrato, en virtud de lo cual:---------------------------------------------------------------

------------------------------------------EXPONEN------------------------------------------------

----PRIMERO: A la luz de los señalamientos públicos que recientemente se han formulado sobre el uso de recursos y fondos públicos en la Rama Judicial, la Primera Parte interesa contratar los servicios profesionales de la Segunda Parte para que realice una investigación sobre el particular y rinda el correspondiente informe con sus hallazgos y recomendaciones.-----------------------------------------------------------------

----SEGUNDO: La Segunda Parte posee la experiencia y los conocimientos necesarios para prestar los servicios antes mencionados.-----------------------------------------------------

----TERCERO: Ambas Partes han convenido en otorgar el presente contrato para el fin anteriormente expuesto, sujeto a las siguientes:-------------------------------------------------

-------------------------------CLÁUSULAS Y CONDICIONES----------------------------------------

----PRIMERA: Naturaleza de los Servicios: La Segunda Parte se obliga a realizar una investigación, y rendir el correspondiente informe con sus hallazgos y recomendaciones, a la luz de los señalamientos públicos que recientemente se han formulado sobre el uso de recursos y fondos públicos en la Rama Judicial. Asimismo,

Recomendado
13/ans/12.

Contrato de Servicios Profesionales y Consultivos
Lcdo César López Cintrón
Página 2

se compromete a asumir cualquier otra encomienda relacionada que le asigne la Primera Parte.---------------------------------------------------------------------------------------------

----SEGUNDA: Naturaleza Confidencial de los Servicios: La Segunda Parte se compromete a mantener en estricta confidencialidad toda la información objeto de su investigación, así como la que genere en virtud de la misma. Asimismo, a menos que reciba autorización previa y por escrito de la Primera Parte, la Segunda Parte no podrá revelar o divulgar en forma alguna dicha información, incluyendo, pero sin limitarse a, los documentos escritos, el informe y los datos a los que tenga acceso o que produzca durante la prestación de sus servicios. La Segunda Parte no podrá utilizar la información objeto de este contrato para ningún fin ajeno a los propósitos del mismo.------------------------------------------------------------------------------------------------------

----TERCERA: Compensación y Forma de Pago: Durante la vigencia de este contrato, la Segunda Parte prestará sus servicios profesionales a razón de DOSCIENTOS DÓLARES ($200.00) POR HORA, hasta un máximo de QUINIENTAS (500) HORAS. La Segunda Parte reconoce expresamente que el presente contrato no conlleva el reembolso de los gastos en los que incurra como parte de los servicios profesionales que preste a la Primera Parte.-------------------------------------------------------------------------

----CUARTA: Cuantía Máxima: La cuantía máxima total a ser pagada a la Segunda Parte de ofrecer los servicios antes descritos durante la vigencia de este contrato es de CIEN MIL DÓLARES ($100,000.00).-----------------------------------------------------------------------

----QUINTA: Partida Presupuestaria: La Primera Parte certifica que ha asignado una partida presupuestaria para cubrir las obligaciones contraídas en este contrato para el año fiscal 2011-2012, la cual se evidencia mediante la cifra de cuenta 141-170200-0001-081-010000-E0002-2012.-----------------------------------------------------------------------------

----SEXTA: Facturación: Para proceder al pago, la Segunda Parte deberá presentar ante la Directora Administrativa de los Tribunales una factura con fecha, en original y dos copias certificadas y firmadas, en la cual certifique y desglose detalladamente los servicios prestados, las horas invertidas, así como el remanente de las horas no utilizadas según el máximo establecido en este contrato. Además, la Segunda Parte incluirá en su factura una certificación que lea:---------------------------------------------------

> Bajo pena de nulidad absoluta, certifico que ningún funcionario o empleado de la Rama Judicial es parte o tiene algún interés en las

Contrato de Servicios Profesionales y Consultivos
Ledo. César López Cintrón
Página 3

ganancias o beneficios producto del contrato objeto de esta factura y, de ser parte o tener el interés antes indicado, ha mediado una dispensa previa. La única consideración para prestar los servicios contratados ha sido el pago acordado con el representante autorizado de la Rama Judicial. El importe de esta factura es justo y correcto. Los servicios se han prestado y no han sido pagados.-------------------------------------------------

-----Antes de procesar el pago, la Directora Administrativa de los Tribunales, o la persona en quien ella delegue, certificará que el servicio fue prestado efectivamente y realizado a su entera satisfacción. Además, certificará que los servicios no han sido facturados ni pagados anteriormente.----------------------------------------------------------------

-----No se procesará el pago hasta que la Segunda Parte haya sometido todos los documentos complementarios requeridos en este contrato.----------------------------------

----SÉPTIMA: La demora de la Primera Parte en la emisión de algún pago hasta un máximo de cuarenta y cinco (45) días no será fundamento para que la Segunda Parte deje de cumplir con las obligaciones contraídas en virtud de este contrato. En el caso de descontinuar la prestación de dichas obligaciones, se entenderá que la Segunda Parte ha incumplido y la Primera Parte podrá adquirir los servicios de otra parte.---------

----OCTAVA: La Segunda Parte es responsable de rendir sus planillas y pagar las aportaciones correspondientes al Seguro Social Federal y al Negociado de Contribución sobre Ingresos del Departamento de Hacienda por concepto de cualquier cantidad tributable como resultado de los ingresos devengados bajo este contrato. La Primera Parte notificará al Negociado de Contribución sobre Ingresos las cantidades pagadas a la Segunda Parte por los servicios contratados. La Primera Parte retendrá el pago debido a la Segunda Parte por concepto de servicios prestados hasta el 7%, a tenor con lo dispuesto en la Sección 1062.03 (a) del "Código de Rentas Internas para un Nuevo Puerto Rico", Ley Núm. 1 de 31 de enero de 2011.-------------------------------------

----NOVENA. Certificaciones Requeridas: La Segunda Parte deberá someter, a fin de que se hagan formar parte de este contrato al momento de su otorgamiento, las siguientes certificaciones expedidas por las entidades gubernamentales correspondientes:------------------------------------------------------------------------------------

-----1. Certificación expedida por el Área de Rentas Internas, o por la División de Asistencia Contributiva del Departamento de Hacienda, indicando que la Segunda Parte ha rendido planillas contributivas en los cinco (5) años anteriores a este otorgamiento. Si dicho Departamento no pudiere certificar el último de los cinco (5)

"cerrado
13/ene/12.
cfc

Contrato de Servicios Profesionales y Consultivos
Lcdo. César López Cintron
Página 4

años contributivos, la **Segunda Parte** someterá copia de la primera página de la planilla radicada para dicho año. En caso de no haber estado obligada a rendir planilla de contribución sobre ingresos durante todo o parte del período de cinco (5) años conforme al Código de Rentas Internas de Puerto Rico, según enmendado, la **Segunda Parte** someterá una declaración jurada exponiendo las razones por las cuales no estuvo obligada a rendir planillas.------------------------------------------------------------------

-----2. Certificación Negativa del Departamento de Hacienda sobre contribuciones adeudadas.-------------------------------------------------------------------------------------

-----3. Certificación de la Administración de Sustento de Menores (ASUME) que acredite que la Segunda Parte está al día en el pago de la pensión alimentaria, de tenerla, o que está acogida a un plan de pago.-------------------------------------------------------

-----4. Certificación de pago de contribuciones sobre la propiedad mueble o inmueble emitida por el Centro de Recaudación de Ingresos Municipales (CRIM).---------------------

-----5. Certificación del Departamento del Trabajo y Recursos Humanos, de ser aplicable, del pago del seguro de desempleo, el seguro choferil y el seguro por incapacidad no ocupacional (SINOT).---------------------------------------------------------

-----6. Certificación Negativa de Deuda con el Fondo del Seguro del Estado.-----------------

-----7. Certificación Negativa de Antecedentes Penales en Puerto Rico.------------------------

---------Se aceptará copia de los comprobantes de solicitud de certificación con el sello oficial del organismo gubernamental que esté procesando la misma. No obstante, dentro de un término de sesenta (60) días a partir de la formalización del contrato, la **Segunda Parte** deberá presentar las certificaciones correspondientes. La **Segunda Parte** expresamente reconoce que esto es una condición esencial del contrato y que, de las anteriores certificaciones no ser correctas en todo o en parte, ello será causa suficiente para que la Primera Parte deje sin efecto el contrato.--------------------------------

----**DÉCIMA:** La Segunda Parte certifica que, a la fecha de convenir este contrato, no ocupa puesto regular, irregular, transitorio o de confianza en ninguna de las instrumentalidades del Estado Libre Asociado de Puerto Rico y que no recibe pago o compensación por servicios regulares bajo nombramiento o contratos de servicios profesionales con un organismo del Estado Libre Asociado de Puerto Rico, excepto aquellos expresamente autorizados por ley. Si la Segunda Parte certifica que tiene

Recomendado
13 / ene / 12

Contrato de Servicios Profesionales y Consultivos
Lcdo. César López Cintrón
Página 5

contratos con otro(s) organismo(s) o municipio(s) del Estado Libre Asociado de Puerto Rico, garantiza que no existe incompatibilidad entre dichos contratos y el presente contrato con la **Primera Parte.**---------------------------------------------------------------------------

-----**UNDÉCIMA:** <u>Gastos de Viaje y Dietas</u>**:** Este contrato no conlleva compensación por gastos de viaje ni dietas.-----------------------------------------------------------------------------------

-----**DUODÉCIMA:** <u>Accidentes de Trabajo</u>**:** La **Segunda Parte** no quedará protegida por la cubierta que mantiene la **Primera Parte** con la Corporación del Fondo del Seguro del Estado bajo la Ley de Compensaciones por Accidentes del Trabajo y demás leyes relacionadas mientras esté prestando los servicios aquí contratados en las facilidades de la **Primera Parte.**------------------------------------------------------------------------------------

----**DÉCIMO TERCERA:** <u>Beneficios Marginales</u>**:** Este contrato no proveerá a la **Segunda Parte** ninguno de los beneficios marginales aplicables a los empleados regulares del Estado Libre Asociado de Puerto Rico. No obstante, cuando a juicio de la **Primera Parte** sirva mejor al interés público, la **Segunda Parte** podrá utilizar aquellos materiales, equipo, facilidades y propiedad pública en general que la **Primera Parte** autorice y que, a juicio de dicha **Primera Parte**, fueren útiles y necesarios para el descargo de los deberes y obligaciones que la **Segunda Parte** asumo de conformidad con los términos de este contrato.------------------------------------------------------------------------

----**DÉCIMO CUARTA:** <u>Intereses Pecuniarios</u>**:** La **Segunda Parte** certifica bajo pena de nulidad que:-------------------------------------------------------------------------------------------

-----1. Ningún funcionario o empleado de la Rama Judicial con facultad de aprobar o autorizar el presente contrato, o miembro de su unidad familiar, es parte o tiene algún interés pecuniario en el otorgamiento del mismo o en las ganancias que éste genere. De comprobarse lo contrario, el contrato podrá resolverse.------------------------------------------

-----2. No se pagaron, ni se pagarán, honorarios contingentes relacionados con este contrato (i.e. "Finder's Fee") pagaderos a tercero y la representante de la **Primera Parte** en este contrato certifica que, hasta donde tiene conocimiento, ningún oficial o representante de la **Primera Parte** ha recibido pago o estipendio de clase alguna relacionado con el otorgamiento de este contrato o que habrá de recibir otros beneficios del mismo. De comprobarse lo contrario, el contrato podrá resolverse y se procederá conforme a la ley y a la reglamentación vigente de la Rama Judicial.---------------------------

Recomendado
13/ene/12
cfc

Contrato de Servicios Profesionales y Consultivos
Lcdo César López Cintrón
Página 6

-----3. La única consideración para suministrar los servicios aquí pactados es el pago acordado con la Primera Parte.---------------------------------------------------------------------------

----DÉCIMO QUINTA: Deber de Lealtad: La Segunda Parte reconoce que, en el descargo de sus funciones a las que se obliga en virtud de este contrato, tiene un deber de lealtad completa hacia la Primera Parte, lo que incluye no tener intereses adversos hacia ésta. De la Primera Parte entender que existen o han surgido intereses adversos con respecto a la Segunda Parte, se notificarán por escrito tales hallazgos y su intención de resolver el contrato en el término de treinta (30) días. Dentro de dicho término, la Segunda Parte podrá solicitarle una reunión a la Directora Administrativa de los Tribunales para exponer argumentos por los cuales no deba tomarse tal determinación. De no solicitarse la reunión en el término mencionado, o de no solucionarse satisfactoriamente la controversia, el contrato quedará resuelto.----------

----DÉCIMO SEXTA: Se considerará que una notificación escrita ha sido debidamente enviada si cualquiera de las Partes la entrega personalmente a la otra obteniendo recibo o si se envía por correo certificado con acuse de recibo a su dirección postal. En el caso de la Primera Parte, la comunicación deberá enviarse a la siguiente dirección: Oficina de Administración de los Tribunales, Hon. Sonia Ivette Vélez Colón, PO Box 190917, San Juan, Puerto Rico 00919-0917. Si la notificación se le dirigiera a la Segunda Parte, ésta deberá enviarse a la siguiente dirección: Lcdo. César López Cintrón, P.O.Box 849 Juncos, Puerto Rico 00777, o a cualquier otra que notifique por escrito con posterioridad a la firma de este contrato. La fecha de notificación será la fecha cuando se entregue personalmente o cuando se deposite en el correo.-------------

----DÉCIMO SÉPTIMA: La Segunda Parte certifica que no ha sido convicta por delitos relacionados con fraude, malversación o apropiación ilegal de fondos públicos y que no se ha declarado culpable de este tipo de delitos en la jurisdicción del Estado Libre Asociado de Puerto Rico ni en la de los Estados Unidos de América. De resultar culpable de los delitos antes mencionados, el presente contrato podrá resolverse inmediatamente.-----------------------------------------------------------------------------------------

----DÉCIMO OCTAVA: Responsabilidad Ética: La Segunda Parte certifica que conoce las normas éticas de su profesión y asume las responsabilidades requeridas por las mismas.--------------------------------------------------------------------------------------------------------

Recomendado
13/ene/12

617

Contrato de Servicios Profesionales y Consultivos
Ledo. César López Cintrón
Página 7

----DÉCIMO NOVENA: La Segunda Parte se compromete a no discriminar contra ningún empleado o candidato a empleo relacionado con este contrato por motivo de su edad, raza, color, sexo, nacimiento, origen o condición social, impedimento físico o mental, creencias políticas o religiosas o status del veterano.-----------------------------

----VIGÉSIMA: Terminación de Contrato: El presente contrato podrá dejarse sin efecto en cualquier momento si una de las partes así lo notificara por escrito a la otra con treinta (30) días de anticipación de la fecha en que se desea finalizar el mismo. La Primera Parte también podrá dejar sin efecto este contrato con quince (15) días naturales de notificación previa en aquellos casos donde, por razones de sana administración pública, así lo estime conveniente. Además, el presente contrato podrá dejarse sin efecto de inmediato de surgir circunstancias excepcionales que afecten directamente la solvencia económica de la Primera Parte para cumplir con las obligaciones pecuniarias contraídas en virtud del mismo, así como inmediatamente que se conozca la existencia de conflicto de intereses en la prestación de servicios.-----

----VIGÉSIMO PRIMERA: Negligencia o Abandono: La Primera Parte podrá resolver este contrato de forma inmediata en el caso en que la Segunda Parte incumpla con el mismo o cumpla de manera negligente. Tal determinación se le notificará por escrito a la Segunda Parte. La Primera Parte se reserva el derecho de reclamarle a la Segunda Parte cualesquiera daños y perjuicios que le ocasione el incumplimiento del contrato. Será discrecional de la Primera Parte continuar con el contrato en el caso en que la Segunda Parte incumpla con el mismo.-------------------------------------------------

----VIGÉSIMO SEGUNDA: Cesión: Este contrato y las obligaciones contraídas en el mismo no podrán ser objeto de un contrato de cesión, excepto que éste sea aprobado por escrito por la Primera Parte.-------------------------------------------------------

----VIGÉSIMO TERCERA: Vigencia: La vigencia de este contrato se extenderá desde el 16 de enero de 2012 hasta el 30 de junio de 2012. El mismo podrá renovarse o enmendarse por acuerdo de las Partes por un periodo adicional de un año a partir de la fecha de su vencimiento, sujeto a los mismos costos, condiciones, disponibilidad de fondos y necesidades de la Primera Parte.---------------------------------------------

----VIGÉSIMO CUARTA: Las Partes estipulan que las cláusulas y condiciones de este contrato son independientes y separadas unas de otras y que la nulidad de una o más

618

cláusulas no afectará la validez de las demás, las cuales se considerarán válidas y vigentes.----------------------------------------------------------------------------------------

---VIGÉSIMO QUINTA: La omisión de la Primera Parte de exigir el fiel cumplimiento de los términos y condiciones del contrato no podrá interpretarse como una renuncia a exigir en lo sucesivo el fiel cumplimiento del mismo.---------------------------------------

----VIGÉSIMO SEXTA: Interpretación: El contrato será interpretado conforme las leyes del Estado Libre Asociado de Puerto Rico y cualquier controversia se dilucidará en los Tribunales del Estado Libre Asociado de Puerto Rico.----------------------------------

----VIGÉSIMO SÉPTIMA: Queda claramente acordado y convenido entre las Partes que este contrato con todos sus anejos contiene una relación fiel y exacta de todos los acuerdos que se han tomado y que no existen otros, por lo cual no podrá ser alterado o modificado a menos que las partes suscriban otro documento que siga las mismas formalidades de este contrato del cual se desprendan tales cambios o variaciones.-------

----VIGÉSIMO OCTAVA: Ninguna prestación o contraprestación objeto de este contrato podrá exigirse hasta tanto el mismo se haya presentado para registro en la Oficina del Contralor, a tenor con lo dispuesto en la Ley Núm. 18 de 30 de octubre de 1975, según enmendada.-------------------------------------------------------------------------------------

----------------------------------------ACEPTACIÓN Y FIRMA----------------------------------------

----AMBAS PARTES manifiestan que han leído y entendido todo el contenido del presente contrato y así lo aceptan por encontrar que el mismo está redactado a su entera satisfacción y que establece fielmente lo pactado.----------------------------------

----PARA QUE ASÍ CONSTE, las Partes suscriben el presente contrato con su firma e iniciales en el margen izquierdo de cada una de sus páginas.----------------------------------

----En San Juan, Puerto Rico, a *13* de *enero* de 2012.------

SONIA IVETTE VÉLEZ COLÓN
Directora Administrativa de los
Tribunales
PO Box 190917
San Juan, PR 00919-0917
Por la Primera Parte

CÉSAR LÓPEZ CINTRÓN
P.O. Box 849
Juncos, Puerto Rico 00777
Por la Segunda Parte

Certifico que el contrato cumple
con los requisitos de forma ley y
reconozco la firma del contratante.

Firma
13 de enero de 2012
Fecha

— O —

Voto particular disidente emitido por el Juez Asociado Señor Colón Pérez.

Por considerar que la tinta y el papel de este Tribunal no deben utilizarse para mancillar la reputación de aquellas personas que, asumiendo los sacrificios personales y profesionales que ello representa, le han servido bien a nuestro país desde el servicio público, disiento del vergonzoso curso de acción seguido por una mayoría de este Tribunal en el presente caso. Veamos.

I

El asunto ante nuestra consideración se originó el 6 de febrero de 2012, mediante la presentación de una queja contra la licenciada Sonia I. Vélez Colón por parte de la Lcda. Zaida R. Hernández Torres. La licenciada Hernández Torres alegó que la licenciada Vélez Colón violó el Canon 9 del Código de Ética Profesional, 4 LPRA Ap. IX, al supuestamente ordenar —mientras fungía como Directora Administrativa de los Tribunales— una investigación contra todos los Jueces y las Juezas de este Tribunal. La licenciada Hernández Torres arguyó que tal investigación se ordenó con el propósito de desviar la atención, y la correspondiente investigación, de ciertas alegaciones que dos alguaciles de la Rama Judicial hicieran en relación con el alegado uso ilícito de personal, propiedad y fondos públicos por parte del entonces Juez Presidente de este Tribunal, Hon. Federico Hernández Denton.

Así las cosas, luego de contar con la contestación de la licenciada Vélez Colón a la queja presentada en su contra, a tenor de la Regla 14(d) del Reglamento de este Tribunal, 4 LPRA Ap. XXI-B, la Secretaría de este Foro remitió el expediente en cuestión a la Oficina de la entonces Procu-

radora General, Hon. Margarita Mercado Echegaray, para su evaluación e informe correspondientes.

Cumpliendo con lo ordenado, el pasado 3 de agosto de 2016, la entonces Procuradora General nos presentó su informe. En síntesis, la Procuradora General entendió que la licenciada Vélez Colón no incurrió en violaciones al Código de Ética Profesional y que, por consiguiente, la queja presentada en su contra debía archivarse. En particular, la Procuradora General analizó la conducta de la licenciada Vélez Colón a la luz del Canon 9, *supra*, y concluyó que este opera en omisiones o actos realizados durante la práctica forense de la abogacía y que, aun de aplicar en otros contextos, no existe precedente de este Tribunal para sancionar —en virtud de dicho canon— la conducta de la licenciada Vélez Colón. Por último, fundamentó su posición en que la contratación del licenciado César López Cintrón que hiciera la licenciada Vélez Colón para realizar la aludida investigación, fue un intento de mantener la transparencia de la Rama Judicial ante el País. Sobre lo anterior, concluyó la Procuradora General, no existía prueba en contrario. Tiene razón la Procuradora General.

Siendo ello así, creemos que en el presente caso —contrario a lo resuelto por una mayoría de este Tribunal— procedía, sin más, el archivo de la queja ante nuestra consideración. Nos explicamos.

II

Como es sabido, el *quantum* de prueba requerido en todo proceso disciplinario contra un juez o una jueza, un abogado o una abogada es el de prueba clara, robusta y convincente. *In re Ruiz Rivera*, 168 DPR 246, 254 (2006); *In re Rodríguez Mercado*, 165 DPR 630, 640 (2005); *In re Caratini Alvarado*, 153 DPR 575, 584–585 (2001). Al presente, " '[n]o existe una definición precisa de dicho criterio probatorio. Sin embargo, hemos reconocido que consiste de

*una carga probatoria "mucho más sólida que la preponderancia de la evidencia, pero menos rigurosa que la prueba más allá de toda duda razonable". También la hemos descrito como aquella [prueba] que produce en un juzgador de hechos una convicción duradera de que las contenciones fácticas son altamente probables' ".* (Énfasis suplido y corchetes en el original). *In re Vissepó Vázquez*, 196 DPR 560, 567 (2016) (Opinión concurrente). Véanse: *In re Salas Arana*, 188 DPR 339, 347 (2013); *In re Martínez Almodóvar*, 180 DPR 805, 820 (2011); *In re Ruiz Rivera*, supra.

Cabe recordar que dicho *quantum* de prueba encuentra su razón de ser en que un proceso disciplinario puede tener como resultado la pérdida del título profesional del querellado. Esto es, su derecho fundamental a ganarse su sustento podría verse afectado, por lo que se exige una mayor carga probatoria que la requerida en otros casos civiles. Véanse: *In re Salas Arana*, supra, pág. 346; *In re Soto Charraire*, 186 DPR 1019 (2012); *In re Irizarry Vega*, 176 DPR 241 (2009).

Es pues, en conformidad con el *quantum* de prueba requerido por la jurisprudencia antes reseñada, que procedemos a evaluar la conducta desplegada por la licenciada Vélez Colón. Ello, claro está, a la luz de los preceptos deontológicos que regulan la profesión de la abogacía.

En este sentido, resulta en extremo pertinente citar *in extenso* el Canon 9 del Código de Ética Profesional, 4 LPRA Ap. IX, precepto que una mayoría de este Tribunal entiende la licenciada Vélez Colón infringió. El referido canon dispone lo siguiente:

> El abogado [y abogada] debe observar para con los tribunales una conducta que se caracterice por el mayor respeto. Ello incluye la obligación de desalentar y evitar ataques injustificados o atentados ilícitos contra los jueces o contra el buen orden en la administración de la justicia en los tribunales. En casos donde ocurrieren tales ataques o atentados, el abogado [y abogada] debe intervenir para tratar de restablecer el orden y la buena marcha de los procedimientos judiciales.
>
> El deber de respeto propio para con los tribunales incluye

> también la obligación de tomar las medidas que procedan en ley contra funcionarios judiciales que abusan de sus prerrogativas o desempeñan impropiamente sus funciones y que no observen una actitud cortés y respetuosa. 4 LPRA Ap. IX.

Según ha sido interpretado por este Tribunal, el campo de acción de dicho precepto ético es limitado. Primeramente, versa sobre asuntos relacionados a la práctica profesional de la abogacía —*In re Busó Aboy*, 166 DPR 49 (2005); *In re Villamil Higuera*, 188 DPR 507 (2013); *In re Rivera Trani*, 188 DPR 454 (2013)— y, particularmente relevante a la controversia ante nos, regula las omisiones o los actos dirigidos a mancillar el honor de los tribunales durante el ejercicio de la práctica forense. *In re Valentín Custodio*, 187 DPR 529 (2012); *In re Guzmán Guzmán*, 181 DPR 495 (2011); *In re González Carrasquillo*, 164 DPR 813 (2005); *In re Markus*, 158 DPR 881 (2003); *In re Crespo Enríquez*, 147 DPR 656 (1999).

Es, precisamente, a la luz del marco jurídico antes expuesto —y no de otros elementos ajenos a este— que debemos disponer de la controversia ante nuestra consideración.

## III

En el presente caso, como mencionamos, la licenciada Hernández Torres presentó una queja ante este Tribunal donde sostuvo que la licenciada Vélez Colón violó el Canon 9 del Código de Ética Profesional, *supra*, al presuntamente ordenar una investigación contra todos los Jueces y las Juezas de este Alto Foro con el supuesto propósito de desviar la atención de ciertos señalamientos que habían realizado dos alguaciles sobre el alegado uso ilícito de personal, propiedad y fondos públicos por parte del entonces Juez Presidente, Hon. Federico Hernández Denton.

En su contestación a la mencionada queja, de forma muy respetuosa, la licenciada Vélez Colón aceptó haber or-

denado una investigación en la Rama Judicial y haber contratado los servicios profesionales del Lcdo. César López Cintrón para que le asistiera en esta tarea. Ahora bien, contrario a la errada conclusión a la que llega una mayoría de este Tribunal hoy, la licenciada Vélez Colón sostuvo que, al ordenar la investigación en cuestión, no pretendió, en forma alguna, atacar a los Jueces y las Juezas que componen este Alto Foro. Por el contrario, la letrada sostuvo que su intención —en todo momento— fue realizar una investigación independiente, ya que los señalamientos formulados por los alguaciles relacionaban a la Oficina de Administración de los Tribunales. Así, como ya vimos, también lo concluyó la Procuradora General.

Como bien señala la Procuradora General en su Informe presentado a este Tribunal, el contrato otorgado por la licenciada Vélez Colón no se perfeccionó con el propósito de investigar a ningún Juez o ninguna Jueza de este Tribunal ni imputaba acto antiético alguno en su contra. Según razonó la Procuradora General, del propio contrato surge que su objetivo era investigar la utilización de recursos y fondos públicos en toda la Rama Judicial sin señalar persona o acto en particular. En el expediente ante nos no existe un ápice de prueba que contradiga de forma alguna la correcta y fundamentada conclusión a la que llega la Procuradora General.

Por otro lado, cabe recalcar que en virtud de la Orden Administrativa Núm. OA-JP-2009-108 de 18 de mayo de 2009, la licenciada Vélez Colón, como Directora Administrativa de los Tribunales, tenía el deber y la obligación de "[t]omar todas aquellas medidas necesarias [...] relacionadas con la contabilidad y el control de la propiedad de la Rama Judicial". Por lo tanto, la letrada razonablemente entendió que, ante las circunstancias particulares ante su consideración y en virtud de las facultades que le fueron delegadas, le competía actuar. Así correctamente lo hizo

cuando ordenó la investigación a la que hemos hecho referencia y que, al parecer, ocasionó cierto malestar en algunos miembros de este Tribunal.

Contrario a lo intimado por una mayoría de este Tribunal, estimo que la licenciada Vélez Colón sí hubiese faltado a los deberes de su posición de haber optado por cruzarse de brazos ante las imputaciones relacionadas con el alegado uso ilícito —por parte de miembros de la Rama Judicial— de personal, propiedad y fondos públicos pertenecientes a esta rama de gobierno. Ello, por tratarse de una imputación que, de haber sido cierta, indudablemente hubiese lesionado la confianza del Pueblo en la Rama Judicial y hubiese puesto en tela de juicio la integridad de sus miembros. Al ser así, no podemos concluir objetivamente que al ordenar una investigación independiente, la licenciada Vélez Colón mancilló el honor del Tribunal o violentó el Canon 9 del Código de Ética Profesional, *supra.*

Otra sería nuestra postura si la licenciada Vélez Colón hubiese actuado en contravención a una prohibición expresa por parte de este Tribunal. Sin embargo, ese no es el caso, pues no fue hasta el 1 de febrero de 2012 —esto es, posterior a la iniciativa de la letrada— que este Tribunal ordenó la recisión del contrato suscrito por el licenciado López Cintrón y aprobó las Reglas para los Procedimientos de Investigaciones Especiales Independiente de la Rama Judicial. Véase *In re Aprobación R. Proc. Esp. RJ*, 184 DPR 500 (2012).

Previo a la aprobación de la reglamentación referida, la licenciada Vélez Colón, al ordenar una investigación sobre la utilización de fondos públicos, cumplió con uno de los deberes que le imponía su cargo. Cumplir con tales cometidos no constituye, ni puede constituir, una violación al Código de Ética Profesional. Cualquier contención en contrario resulta absurda.

## IV

En fin, como se puede apreciar, la actuación de la licenciada Vélez Colón estuvo dirigida en todo momento a investigar alegaciones que, por su naturaleza, relacionaban a la Oficina de Administración de los Tribunales. A través de su investigación, la letrada precisamente intervino —mediante un mecanismo objetivo— con el fin de restablecer el orden y brindar el curso de acción correcto a los que posteriormente resultaron ser *ataques injustificados* contra el entonces Juez Presidente de este Tribunal, Hon. Federico Hernández Denton, con el único fin de forzar artificialmente una vacante en la Presidencia de este Tribunal. Así quedó demostrado mediante el resultado de las investigaciones que al respecto condujeron otros organismos del Estado, ajenos a la Rama Judicial. Si injustificado y malintencionado fue el proceso al que se expuso al entonces Juez Presidente Hernández Denton, más injustificada e infundada es la queja presentada por la licenciada Hernández Torres contra la entonces Directora Administrativa de los Tribunales y, por ende, el proceso disciplinario al que esta ha sido sometida.

No procede, pues, avalar con nuestro voto tan lamentable y motivado proceder. *Repetimos: el papel y la tinta de este Tribunal no deben utilizarse para mancillar las reputaciones de aquellas personas que, asumiendo los sacrificios personales y profesionales que ello representa, le han servido bien a nuestro País desde el servicio público.*

## V

A la luz de lo antes expuesto, resulta indiscutible que la conducta desplegada por la licenciada Vélez Colón no constituye una violación al Canon 9 del Código de Ética Judi-

cial, *supra*. Por lo tanto, procedía archivar, sin procedimiento ulterior, la queja ante nos.

Licenciada Vélez Colón, desde nuestro prisma —y en sus pasados desempeños como Jueza del Tribunal de Primera Instancia, como Jueza del Tribunal de Apelaciones y como Directora Administrativa de los Tribunales— puede sentir la satisfacción que solo genera el cumplimiento con lo debido, que en su caso se traduce a un trabajo bien hecho.